WALKER *et al. v.* GRAVES *et al.*

(*Nashville,* December Term, 1938.)

Opinion filed March 4, 1939.

KENNETH RAYNER and J. E. MADDEN, both of Memphis, for appellants.

S. W. POLK, of Memphis, for appellees.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This bill was filed to set aside an order of the Lake County Court appointing Charles Graves guardian of the estate of Nellie Graves Walker, alleging that the order appointing the guardian was null and void, for the reason that no notice was given Nellie Graves Walker, by service of process upon her or otherwise, of the proceeding in which this appointment of a guardian for her estate was made.

The bill was brought by the husband of Nellie Graves Walker, as her next friend, and alleged that she had become *non compos mentis* in the year 1933, and had been committed to the State Hospital, at Bolivar, Tennessee, in the latter part of 1933, under an order of commitment entered by the County Court of Lake County, adjudicating her of unsound mind, upon the petition of the com-

plainant. The bill shows that her condition has not improved, is of long duration and incurable.

It is further alleged that, while she had no estate at the time of her commitment, in December of 1937, her sister, Mrs. Nora Mixon, died in Arkansas intestate, leaving as her sole heirs at law the defendant, Charles Graves, a brother, Mrs. Emma Graves Lowenstein, a sister, and complainant's wife, Nellie Graves Walker. It is alleged that the estate was of considerable size, inventorying something more than $60,000.

The bill then alleges that "on or about December 30th, 1937, Charles Graves, by ex parte proceedings in the County Court of Lake County, Tennessee, was appointed guardian of the estate of Nellie Graves Walker, n. c. m.", who thereupon entered into bond in the sum of $5,000.

The bill then proceeds to charge, as hereinbefore stated, that this appointment of Charles Graves is absolutely null and void, for the reason, among others now unnecessary to consider, that no service of process was had upon Nellie Graves Walker, n. c. m., nor any notice whatsoever given her nor anyone legally appointed in her behalf.

The bill prayed that Charles Graves be removed as guardian, and complainant Walker be appointed in his stead, and for certain other relief not necessary now to consider.

The Chancellor sustained demurrers which set forth several grounds, but it is conceded that the question to be determined by this Court on appeal from the decree of the Chancellor dismissing this bill is whether or not the order of the County Court appointing a guardian for Mrs. Walker, who was at the time an inmate of the Western State Hospital, under an order previously made by the same Court, is void because of an absence of no-

tice to her of the proceedings incident to this appointment of a guardian for her estate. It is conceded that the proceedings in that Court previously had, under which Mrs. Walker was adjudged a person of unsound mind and committed to the hospital, where in all respects regular and pursuant to the personal service upon her required by the statute; the insistence of complainant being that, despite the fact that notice had been served upon Mrs. Walker in connection with the proceeding in which her insanity was adjudicated, it was essential to the validity of an appointment subsequently made in the same Court that other and additional notice should be served upon her of this specific proceeding. Counsel for appellant say, further, that it was also necessary that a guardian *ad litem* be appointed in this connection for Mrs. Walker.

The record in this case indicates that the proceedings were had under the authority of Chapter 17, Public Acts of 1919, as amended (Code, secs. 4433-4499), providing for the commitment of insane persons to the State Hospitals. It was held in *Johnson* v. *Nelms,* 171 Tenn., 54, 100 S. W. (2d), 648, that this Act left in force Code, secs. 9613-9638, and afforded a cumulative remedy, or plan, for dealing with the insane. Touching this matter of the appointment of a guardian the pertinent Code section 4478, reads as follows:

"When a person is found insane and committed to a state hospital, as hereinbefore provided, this shall be sufficient grounds in all cases for the appointment of a guardian by the county court of which said patient is a resident, and it shall be the duty of the court to appoint a guardian in all such cases when application is made by superintendent of the hospital or any one else."

So, when the proceedings is in the Chancery Court, the requirement is that upon the finding of lunacy the Clerk shall appoint a temporary guardian, and the Chancellor shall make a permanent appointment at the following term.

It seems clear that the appointment of a guardian is an incident of the main proceeding, and that the exercise of the power to adjudge the lunacy automatically confers the incidental power to appoint a guardian for the person or estate of one who has been adjudicated incapable of acting for himself. From the moment when one accused of insanity has been brought before the Court and adjudged insane, he becomes the special ward of the Court, and there runs through the Act of 1919 the recognition that from that time, so long as the commitment continues, the person and property of the ward shall be supervised by the Court of commitment, and that jurisdiction of his person and property continues in that Court so long as the conditions remain unchanged.

No holding of this Court directly in point is cited to sustain the insistence that further, or second, notice must be given of the appointment of a guardian, when the appointment follows an adjudication of insanity, after personal notice to the accused and a legal hearing. The broad and axiomatic principle is relied on that no person shall be deprived of his liberty or property without due process—specifically notice to him and opportunity to be heard—and text book generalizations are quoted applying this general principle to appointments of guardians for alleged insane persons.

In the first place, the ward is not deprived of his property by the appointment of a guardian. On the contrary, the step is taken to preserve it for him. It is

to be held and kept for him by an appointee of the Court until such time as he may be able to care for it himself. No adverse relationship is involved or arises. No encumbrance, or sale or other alienation of his property is thereby authorized. What was said in *Kurtz* v. *St. Paul & Duluth R. Co.*, 48 Minn., 339, 51 N. W., 221, 31 Am. St. Rep., 657, although guardianship of a minor was involved, is appropriate just here: ''Notice of the hearing for such appointment is not a constitutional prerequisite to the jurisdiction to name a guardian. Appointing a guardian deprives no one of his property, and does not change or affect the title of it. Letters of guardianship are merely a commission which places the property of the ward in the care of an officer of the court as custodian, and in its effect is not essentially different from the appointment of a receiver, or temporary administrator, a jurisdiction which can be, and frequently is exercised before service of any process. The matter of notice of an application for the appointment of a guardian is, therefore, purely a matter of statutory requirement. . . . My own opinion is that when it appears that the person or property was the subject of guardianship, and that the letters were issued by the proper probate court, as were the facts here, the letters of guardianship are not subject to collateral attack, but, like letters of administration, are conclusive evidence of the due appointment of the person therein named, until reversed on appeal, or revoked by the court which granted them. This is the rule in most jurisdictions; and the practical difficulties and embarrassments resulting from a different rule are very apparent.''

In the next place, it cannot be said that the appointment is made without notice, because the Act under the

authority of which he has been brought into Court and adjudged insane expressly provides, as we have seen, that "this shall be sufficient grounds in all cases for the appointment of a guardian by the county court of which said patient is a resident," etc. He has thus been put on special notice that this particular step may follow the adjudication.

It thus so plainly appears that statutory authority is conferred for the appointment of a guardian when an adjudication of insanity and commitment has been made, that it may be assumed that no question would be made of the rightfulness of the appointment in the instant case, but for the fact here appearing that the appointment was not made at the time of, or immediately upon the adjudication of insanity, and not until the lapse of several years. The position taken is that in such a case— even though the appointment is made "by the County Court of which the patient is a resident," and the same Court which has adjudged him insane and ordered his commitment, and although there has been no change in his condition for the better, and he remains in the hospital of his commitment and with his person subject to the orders of the Court—yet notice must be served upon him, before a valid appointment of a guardian for his property may be made.

We are cited to no decision of the question presented by this state of facts, but certain general text book statements are relied on.

For example, it is said in 14 R. C. L., p. 570, that, "It is generally held that if proceedings are instituted for the purpose of appointing a guardian or committee to take charge of the person or property of an alleged insane person, the latter must be given proper notice." Look-

ing to the cases cited in the footnote it appears that there had been no notice of a lunacy proceeding had or instituted previously. This is also true of the cases discussed in the note to *McKinstry* v. *Dewey*, 192 Iowa, 753, 185 N. W., 565, in 23 A. L. R., 587, 590, cited by counsel for appellant. The pertinent text in 32 C. J., p. 655, reads: ''It is generally held that one for whom a permanent committee or guardian is sought to be appointed as an incompetent person is entitled to notice of the application for the appointment, even though the statute may not require it.'' The cases cited in the notes in support of this text, are none of them, so far as we have been able to discover, cases in which the incompetent person had been previously adjudged incompetent or committed as insane, after due notice with no change in his condition. These decisions rest on the fundamental and constitutional right of every person to notice of a proceeding to take away his liberty and property control. But, obviously, they are not directly in point here where notice of the inquisition was served on the person charged. However, more pertinently to the facts of the instant case, the text of Corpus Juris proceeds:

''In some jurisdictions such notice is required *even when the person in question has already been duly adjudged insane.*'' (Italics ours.) The following cases are cited in the notes for this text: *Kimball* v. *Fisk*, 39 N. H., 110, 75 Am. Dec., 213; *In re Bellenger*, 32 Misc., 414, 66 N. Y. S., 531; *Shumway* v. *Shumway*, 2 Vt., 339; *Chase* v. *Hathway*, 14 Mass., 222. In the *New York Case*, Bellenger was committed to the State Hospital as a lunatic, on June 6th, 1899. On the 17th of June following a committee was appointed of his person and estate. He thereafter escaped and subsequently brought proceed-

ings for the discharge of this committee. He challenged the appointment for want of notice to him. The opinion of the Court states the theory of the case to be "that the failure to serve notice upon the petitioner of the original petition and notice, by which those proceedings in the county court were commenced, prevented that court from having any jurisdiction of the person or property" [32 Misc., 414, 66 N. Y. S., 532] of the petitioner. The defect in the matter of the notice related back to his commitment. The Court says: "I cannot agree with the counsel for the respondent that there is no necessity of personal notice to the alleged lunatic of the proceeding designed to take from him the control of his own estate and the freedom of his own person." Quite obviously, this case is not authority for this text.

In the early Vermont case of *Shumway* v. *Shumway*, it plainly appears from the opinion that notice was not given of the *inquisition* proceedings, in connection with which the appointment of a guardian was made.

In *Kimball* v. *Fisk, supra,* the Court held the *inquisition proceedings* adjudging the party insane to be fatally defective for want of notice and otherwise, so that here, again, the holding that notice of the appointment of a guardian was essential related back to the inquisition.

We next quote from the opinion in the leading case of *Chase* v. *Hathaway,* the following statement of the issues therein decided: "The reasons of appeal, filed in the court below, . . . were as follows, viz.: 1. That he was not, at the time of the adjudication of the said selectmen, an idot, non compos, lunatic, or distracted person, and incapable of taking care of himself; 2. That he had no notice of the time and place when and where the said selectmen made their pretended inquisition and

adjudication; 3. That notice was not given to him,'' etc. The opinion proceeds:

"There being no provision in the statute for notice to the party who is alleged to be incompetent, by reason of insanity, to manage his estate, it seems that the judge of probate did not think such notice essential to his proceedings. But we are of opinion that, notwithstanding the silence of the statute, no decree of a Probate Court, so materially affecting the rights of property and the person, can be valid, unless the party to be affected has had an opportunity to be heard in defence of his rights.

"It is a fundamental principle of justice, essential to every free government, that every citizen shall be maintained in the enjoyment of his liberty and property, unless he has forfeited them by the standing laws of the community, and has had opportunity to answer such charges as, according to those laws, will justify a forfeiture or suspension of them. And whenever the Legislature has provided that, on account of crime or misfortune, the public safety or convenience demands a suspension of these essential rights of the individual, and has provided a judicial process, by which the fact shall be ascertained, it is to be understood as required that the tribunal, to which is committed the duty of inquiring and determining, shall give opportunity to the subject to be heard in support of his innocence or his capacity.''

Not only do these cases not hold that "notice" of the appointment "is required even where the person has already been duly adjudged insane,'' but we find no reported case so holding.

Now, on the contrary, we have examined cases cited by Corpus Juris (Volume 32, page 655) in notes to the following text (which immediately follows that above con-

sidered): "But in other jurisdictions, where a notice of the proposed inquest has been given to the lunatic, or if the adjudication of lunacy has been had upon due notice, no additional notice is necessary to authorize the appointment of a committee." The following cases directly sustain the text: *Oster* v. *Meyer*, 113 Ky., 181, 67 S. W., 851; *Johnson* v. *Gustafson*, 96 Kan., 630, 152 P., 621; *Foran* v. *Healy*, 73 Kan., 633, 85 P., 751, 86 P., 470, opinion on petition to rehear; *Swope's Adm'r* v. *Frazier's Committee*, 37 S. W., 495, 18 Ky. Law Rep., 649; *Heckman* v. *Adams*, 50 Ohio St., 305, 34 N. E., 155; *Davison* v. *Tipton*, 9 Ohio Dec., Reprint, 60.

Others do so in principle. *Davison* v. *Johonnot*, 7 Metc., (Mass.), 388, 41 Am. Dec., 448; *Brigham* v. *Boston, etc., R. Co.*, 102 Mass., 14; *Matter of Maginn*, 100 App. Div., 230, 91 N. Y. S., 814.

◼ The principle applied in these last listed cases is that the person having been adjudged insane, he is in the Court and subject to its jurisdiction and, therefore, subsequent orders and entries thereof may be made without additional notice to him, without invasion of his constitutional rights. And, quite pertinent to the instant case, these cases appear to recognize, what is directly held in others, that with jurisdiction established, both of the subject matter and of the person under original proceedings, subsequent orders and decrees, relating to the incompetent's estate are at most irregular and voidable only, and not void. *State* v. *Richmond*, 26 N. H., 232, 241; *Kimball* v. *Fisk, supra;* and see *Chaloner* v. *Sherman*, 242 U. S., 455, 37 S. Ct., 136, 138, 61 L. Ed., 427, wherein a guardian had been removed and another appointed without notice to the previously adjudged incompetent, and Mr. Justice BRANDEIS said, "This was a mere

substitution of one officer of the court for another. No substantial right of the plaintiff was affected. Due process does not require notice and opportunity to be heard in such a proceeding; and the irregularity, if any, was not such as to prevent the court from exercising jurisdiction to determine the matter.''

In the, perhaps, leading case of *Foran* v. *Healy, supra,* while the lapse of time was not great, apparently less than two months, the original commitment had been in another County and different Court, a certified copy of these proceedings being filed in the County Court making the appointment of a guardian. Finding that no notice had been given to the insane man, then in the State Hospital, the opinion proceeds:

''In the absence of statutory requirements no notice is necessary to confer authority upon a probate court to appoint a guardian, either for a minor, or a lunatic who has been duly adjudged to be a person of unsound mind. *Kurtz* v. *St. Paul & Duluth R. Co.,* 48 Minn., [339], 342, 51 N. W., 221, 31 Am. St. Rep., 657; *Swope's Adm'r* v. *Frazier's Committee* (Ky.), 37 S. W., 495; *Heckman* v. *Adams,* 50 Ohio St., 305, 34 N. E., 155; *Martin L. Leffel* v. *Henry C. Knoop,* cited in *Heckman* v. *Adams, supra,* but not reported; *Von Matre* v. *Sankey et al.,* 148 Ill., 536, 36 N. E., 628, 23 L. R. A., 665, 39 Am. St. Rep., 196.

''In the case of *Heckman* v. *Adams, supra,* the lunatic was regularly adjudged to be of unsound mind, and was sent to the asylum for the insane. Eight months afterwards a guardian of her estate was appointed without notice. It was held that no notice was necessary; the statute not requiring it. The appointment was made because of the former adjudication, upon which the lunatic had notice.

"By the appointment of a guardian for the estate of a person of unsound mind no constitutional right is involved. He is not thereby deprived of any property; on the contrary, his property is protected and preserved by the court, whose ward he is, through its officer, who has been required to give bond for the faithful and honest performance of his duty. In this state full authority has been conferred upon the probate courts to exercise this power. Section 8, art. 3, Const. [Gen. Stat. 1901, sec. 155.] The statute confers this duty in broad and unrestricted terms. It reads:

" 'If it be found by the jury that the subject of the inquiry is of unsound mind. . . . The court shall appoint a guardian of the person and estate of such person.' [Gen. Stat. 1901, sec. 3945.]

"It follows, that whenever it is made to appear to the probate court, that any person within its jurisdiction, has been duly and legally found by a jury to be a person of unsound mind, it then becomes the duty of such court to appoint a guardian for such person. Usually the adjudication of lunacy, and the appointment of a guardian take[s] place in the same court and at the same time. In such a case notice is indispensable upon the question of lunacy, but when that fact is established the guardianship follows as a matter of course. There are cases which apparently hold that the appointment of a guardian should be after notice to the lunatic, but in all of these cases which have been brought to our attention the adjudication of lunacy occurred at the same time that the guardian was appointed, and the notice was necessary on that account."

It will be observed that the statute quoted in this opinion is almost identical with ours, and that the reasoning

and conclusions are directly applicable to the instant case. The bill in this cause was filed in another County and Court from that in which the appointment challenged was made, and in a county other than that of the residence of the *non compos.*

*Brewer* v. *Brewer*, 19 Tenn. App., 209, 243, 84 S. W. (2d), 1022, is relied on, but the point of distinction above noted applies to that case, where no legal notice had been given of the lunacy proceeding in which appointment of a guardian was made. So of cases cited in the Brewer opinion, *Albright* v. *Rader*, 81 Tenn. (13 Lea), 574, and *Davis* v. *Norvell*, 87 Tenn., 36, 9 S. W., 193; *Smith* v. *Smith*, 159 Tenn., 36, 15 S. W. (2d), 747, was a proceeding brought fraudulently by the husband of a *non compos* to encumber her property. This Court rightly held that the bare fact that she had been committed to the hospital for the insane did not justify the prosecution of a suit for such an adverse purpose without service of notice upon her.

It is conceded that when the County Court made the appointment herein challenged, there had been no change in the mental or physical condition of Mrs. Walker since her commitment, unless for the worse, and there was no apparent prospect of recovery. Nor had there been any change in the matter of personal custody, she being yet in the hospital to which she had been committed by the Lake County Court. She was thus, we think, not only before the Court in the technical sense relating to service of process, but she was in the safekeeping of the Court as its ward.

██ In principle, views expressed by Chancellor COOPER in *Speak* v. *Metcalf*, 2 Tenn. Ch., 214, are in accord. In that case a bill had been brought against one

who had been previously adjudged a lunatic and the application was for appointment of a guardian *ad litem.* His property rights were involved and no guardian had been theretofore appointed. Holding that by virtue of the previous lunacy proceedings he had jurisdiction, the Chancellor appointed the guardian without notice to the insane person, saying, what is applicable here, "In the case before us there has been an inquisition and the finding of lunacy, under the orders of the court. The defendant is, in effect, a ward of the court by virtue of these proceedings, and under its charge." This was the exact situation in the County Court of Lake County, when the appointment herein challenged was made. The charge is that the decree or order of appointment was void, (and necessarily this must be the charge, because otherwise the decree would obviously not be subject to collateral attack). Now from what has been seen and said, it is clear that this order is not void. At most, it could be held voidable only. Conceding, as we do, that the better practice is to serve notice on the *non compos mentis* when application is made for the appointment of a guardian for the insane person's property after considerable time has elapsed since his commitment,—even though the application is made in the Court which committed him, and his status remains unchanged, in fact and in legal contemplation—we nevertheless hold, on reason and authority, that omission of such notice does not render the order of appointment void. This is a defect and irregularity because of which the order of appointment may be reviewed and set aside, either by the Court of action, or on appeal, if injustice has resulted, upon the application of those who are adversely affected.

It results that the decree of the Chancellor is affirmed and the bill dismissed, without prejudice to the complainant's right to apply to the County Court of Lake County for such relief as he may show himself entitled to, if any.