BRADFORD v. AMERICAN NAT. BANK et al.—158 S. W. (2d) 366.

Middle Section.   November 26, 1941.

Petition for Certiorari denied by Supreme Court, February 7, 1942.

Rutherford & Rutherford and W. A. Guild, all of Nashville, for appellant.

Bass, Berry & Sims and J. O. Bass, all of Nashville, for appellee American National Bank, guardian.

James W. Stokes, of Nashville, for appellee S. L. Mays.

FELTS, J.   Mrs. Sammie Mays Bradford filed this bill to have declared void a proceeding in the county court in which she was ad-

judged insane and committed to the Central State Hospital and the American National Bank was appointed her guardian, and to recover of the guardian what it had paid out for her maintenance at the hospital and for other expenses of the guardianship.

She owned a farm of 148 acres in Davidson County, on which she and her husband lived. She was past 60 and he was over 80 years of age. Early in June, 1938, she was arrested on a charge of burning the house of one of her neighbors, a Mr. Calliouette. On June 7, 1938, her brother, S. L. Mays, made affidavit before a deputy county court clerk of Davidson County that she was insane; and process issued, on which she was brought before the county judge on an inquisition of lunacy, under chapter 17, Acts of 1919, Code secs. 4433 et seq. Her attorney, Mr. Dan Cunningham, was appointed guardian ad litem and attended the hearing. Two physicians, Dr. Pilcher Gilbert and Dr. John Lentz, examined her and made oath that she was insane. The county judge adjudged that she was insane and should be committed to the Central State Hospital for the Insane, and that she had funds with which to pay for her maintenance at said institution; and the court appointed the American National Bank her guardian. She was taken to the Central State Hospital, accompanied by a copy of the commitment papers, as required by Code, section 4462.

The guardian took charge of her personalty, $81.12 in bank, $150 of U. S. Bonds,. household goods, some livestock and farming implements. On application of the guardian, the county court entered an order June 20, 1938, adjudging that it was to the manifest interest of the ward that her personalty be sold and the proceeds used to pay for her maintenance at the hospital and other necessary expenses of her commitment, and directing the guardian to sell the personalty and so to apply the proceeds. The guardian had a public sale and sold the household goods, farming implements, and livestock for a total of $366.30. The guardian paid the hospital for her maintenance, which was $100 each quarter, and paid other expenses, pursuant to the orders of the county court, until the ward's personal estate was exhausted. The guardian then filed a bill in the Chancery Court, Part I, of Davidson County for sale of her real estate for her support and maintenance. The master reported that such sale was necessary, and the report was confirmed by the chancellor; but no further steps were taken, apparently because in the meantime Mrs. Bradford filed in the County Court a petition for restoration.

That petition was filed December 2, 1938, by her through her husband as next friend. It alleged that she was not insane and that the lunacy proceeding was void; but it prayed in the alternative that she be adjudged restored in mind and competent to govern herself and her estate, and be released from the hospital. This was treated as a petition for restoration, under Code section 9656. The county judge found she was still insane, and dismissed the petition. She appealed

to the circuit court. That court, taking the view that the appeal should have been to the Court of Appeals, dismissed the petition on motion. The Supreme Court reversed the judgment of the circuit court and remanded the case to that court for a hearing on the merits. Bradford v. Ragsdale, 174 Tenn., 450, 126 S. W. (2d), 327, 121 A. L. R., 1506. On February 26, 1940, there was such a hearing. The jury found that Mrs. Bradford was of sound mind; and the court adjudged that she be restored as sui juris, that she make settlement with her guardian and the guardian make settlement with her, and that she be released from the hospital; and she was released.

On June 6, 1940, she filed the present bill in the Chancery Court, Part II, of Davidson County. The theory of the bill was that, since her estate exceeded $500 and jurisdiction was concurrent in the county and chancery courts, the procedure in the county court should have been the same as that prescribed by Code sections 9622 et seq. for the chancery court; and it was alleged that no petition was filed, no process or copy of petition was served on her, she was not given five days notice, not afforded a trial by jury, and the guardian ad litem was appointed by the county judge and not by the clerk; and that these were jurisdictional prerequisites and failure to follow them rendered the proceeding void. The prayer was that the entire proceeding and the appointment of the guardian be declared void, that the defendants, the guardian and S. L. Mays, be enjoined from taking further steps under said proceeding, and that complainant have a decree against the guardian for the value of her property and money illegally spent by it.

Mays' answer detailed the circumstances which induced him to bring the lunacy proceeding against complainant. She wired up the gate of her neighbor, Mr. Calliouette, refused to allow his employees to enter, and threatened them with violence. He had her arrested on a peace warrant. She made bond and returned home. That night his home was burned, this being the third suspicious fire within 500 yards of her house. The state fire marshal and officers investigating the fire caused her to be arrested on a charge of arson, and she was put in jail. Mays, wishing to help his sister, consulted a lawyer, who advised him to have her examined by a competent physician. For this purpose he employed Dr. J. P. Gilbert, a psychiatrist. Dr. Gilbert and Dr. Lentz, Health Officer of Davidson County, examined her, and reported that she was insane and should be confined in an institution for the care of the insane. On the advice of these doctors and his attorney, Mays instituted the proceeding to have her committed to the Central State Hospital for the Insane.

In its answer the guardian denied that its appointment was void, and averred that the lunacy proceeding was in strict accord with chapter 17, Acts of 1919, Code sections 4433 et seq. and that its appointment was in all respects valid and proper. It alleged that it had not sought the appointment but had been induced to accept it by

request of a clerk in the office of the county judge; that it had no interest in this litigation except to discharge its duties under the law; and that it had managed the estate and paid the expenses of the ward according to the orders and decrees of the court. It exhibited a statement of receipts and disbursements, showing a balance of $9.85 in its hands. It alleged that the estate owed debts and expenses, approximately $500 past due to the Central State Hospital for the ward's maintenance, expenses incident to the pending chancery suit to sell the land, and other expenses (the guardian not having received any compensation for its services, except the sum of 20 cents, as shown by its report); that for these reasons it was not possible for it to make final settlement of its guardianship until these matters were adjusted by proper decree of a court; and that it "stands ready and willing to do whatever it may be authorized and directed to do by courts having jurisdiction of the matter."

The chancellor decreed that the appointment of the guardian was valid, and that it had properly administered the estate; and he dismissed the bill.

Complainant appealed and has assigned errors asserting that there is no evidence to sustain the Chancellor's decree, that the evidence preponderates against it, that the chancellor should not have held that the guardian had properly administered the estate, and that he should have enjoined the guardian from further prosecuting the suit to sell the land.

As stated, the lunacy proceeding was under chapter 17, Acts of 1919, as modified in Code sections 4433 et seq. These sections confer on the county judge or chairman jurisdiction of all inquisitions of lunacy for the purpose of committing a person to a state hospital (4451), and outline the procedure to be followed (4452-4474). Where a person who has an estate is found to be insane and is committed, the court is empowered to appoint a guardian for him (4478). The cost and expense of the proceedings and his maintenance are made a charge upon his estate (4440, 4460), which the guardian must pay or be subject to removal (4478).

■■ It was not charged that any step required by these sections was omitted. The attack on the proceeding was based on a failure to observe the steps required by Code sections 9622 et seq. These sections prescribe the practice in inquisitions in the chancery court; but they do not govern a proceeding under sections 4433 et seq., which provide their own procedure, different in some particulars from that provided by sections 9622 et seq. Appellant would have been entitled to a jury trial, if she, her attorney or guardian ad litem had demanded it; but, in the absence of such demand, a jury trial was not essential to the validity of the proceeding. Johnson v. Nelms, 171 Tenn., 54, 100 S. W. (2d), 648. Sections 4433 et seq. provide a simple, inexpensive, and expeditious remedy for committing a person to a state

hospital where there is little or no doubt as to his insanity, which is cumulative and additional to that of sections 9613-9638. Johnson v. Nelms, supra; Walker v. Graves, 174 Tenn., 336, 340, 125 S. W. (2d), 154, 156.

It now seems to be conceded by counsel that this is a collateral attack on the county court proceeding and the appointment of the guardian which cannot be maintained in view of our recent decision in Kirk v. Sumner County Bank & Trust Co., 25 Tenn. App., 150, 153 S. W. (2d), 139. In that case we held that, in an inquisition under chapter 17, Acts of 1919, Code sections 4433 et seq., the county court acts as a court of general jurisdiction and its judgment, on a collateral attack, will be supported by the presumption of validity which attends a judgment or decree of a court of general jurisdiction; and that, in the absence of an affirmative showing upon the record to the contrary, it will be presumed that the court had jurisdiction both of the subject and the person; and all the necessary facts were found to give the court jurisdiction to render the judgment. This court had held, in Brewer v. Griggs, 10 Tenn. App., 378, 397-399, that the jurisdiction of the county court over the persons and estates of persons of unsound mind was statutory, special and limited, and not general; and that a judgment declaring one to be of unsound mind and appointing a guardian for him was void on collateral attack, where the record failed affirmatively to show all the facts necessary to give the court jurisdiction. Judge Faw, who delivered the opinion in that case, pointed out (pages 397-399 of 10 Tenn. App.) that in some instances the county court is a court of general jurisdiction, while in others it is a court of special and limited jurisdiction. All the cases on the subject are reviewed in Magevney v. Karsch, 167 Tenn., 32, 40-51, 68, 69, 65 S. W. (2d), 562, 92 A. L. R., 343; See also Reynolds v. Hamilton, 18 Tenn. App., 380, 384, 77 S. W. (2d), 986; In re Hodge's Estate, 20 Tenn. App., 411, 416, 99 S. W. (2d), 561. But, as pointed out in Brewer v. Griggs, 10 Tenn. App. (pages 390, 399), that inquisition was under chapter 41, Acts of 1797 and chapter 163, Acts of 1851-52, now Code sections 9613-9621, and not under chapter 17, Acts of 1919, Code sections 4433-4496. As stated above, "all inquisitions of lunacy" under this latter act are to be heard by the county judge or chairman (sec. 4451); and this act, like our adoption statutes, contemplates the usual accompaniments of judicial procedure, a competent court, notice to the accused person by process bringing him before the court, a subject of judicial inquiry, a hearing, and a judgment. Such a judgment, like a judgment in an adoption proceeding, should have the benefit of the usual presumptions upholding judgments of courts of general jurisdiction. Cf. Magevney v. Karsch, supra. Upon this distinction between an inquisition under the earlier acts and one under the later act, Brewer

v. Griggs, supra, and Kirk v. Sumner County Bank & Trust Co., supra, are consistent.

■■ Apparently abandoning their attack on the guardianship as void, learned counsel for appellant now attack the guardian's sale of the ward's personalty and certain of the guardian's disbursements. These disbursements are $5 paid to Dr. Gilbert, a physician called in the case, $5 paid to a deputy sheriff for transporting the ward to the hospital, $30 paid July 17, 1940, for the third premium on the guardian's bond, and $150 paid to Mr. James W. Stokes, an attorney, for ''legal services rendered in re said ward, as per decree in the County Court.'' It is argued that the sale was void for want of notice to the ward, and that these disbursements were illegal and unauthorized.

We think the sale was not invalid. It was made pursuant to a decree of the county court, which found and adjudged that it was for the manifest interest of the ward that her personalty be sold and the proceeds used to pay the expense of her commitment and her maintenance at the hospital. Such expenses were a charge upon her estate, which the guardian was bound to pay. Code sections 4460, 4478. The court had power to order the sale for payment of the expenses of her commitment and her maintenance. Code sections 8503-8507. Her person and estate had already been brought before the court, and no further notice to her was necessary to enable the court to authorize the sale. Walker v. Graves, 174 Tenn., 336, 125 S. W. (2d) 154. In that case it was said (174 Tenn., 341, 125 S. W. (2d), 156):

''From the moment when one accused of insanity has been brought before the Court and adjudged insane, he becomes the special ward of the Court, and there runs through the Act of 1919 the recognition that from that time, so long as the commitment continues, the person and property of the ward shall be supervised by the Court of commitment, and that jurisdiction of his person and property continues in that Court so long as the conditions remain unchanged.''

We think these disbursements were not illegal or unauthorized. They were properly part of the expenses of the commitment proceeding, and were made by the guardian pursuant to proper orders of the court. Counsel rely on McCuiston v. Haggard, 21 Tenn. App., 277, 109 S. W. (2d), 413; State ex rel. Wilson v. Meek, 24 Tenn. App., 492, 494, 146 S. W. (2d), 961; Peak v. Davidson County et al., 170 Tenn., 313, 317, 95 S. W. (2d), 49. These cases are inapposite. The first two concerned a guardian's investment of the ward's funds, which is regulated by statute. In the last case an insane person had been accepted and kept for several years as a non-paying or charity patient by the Davidson County Asylum. She was later awarded a pension and a guardian was appointed for her. It was held that the county court had no jurisdiction to direct the guardian to pay Davidson County for the past services which had been rendered to the

ward as a charity patient, where it was neither alleged nor shown that such payment was for the manifest interest of the ward.

We also think the chancellor rightly declined to enjoin the suit to sell the land. It is true it has been adjudged that the ward is restored in mind and that the guardianship shall terminate. Code section 9659. But it cannot be terminated until the guardian can make final settlement. The guardian cannot do this until the debts properly incurred during the guardianship have been paid.

For the foregoing reasons the decree of the chancellor is affirmed. The appellant will pay the costs of the appeal.

Crownover, P. J., and Howell, J., concur.