KIMBROUGH *v.* WRIGHT.

Division A.   Mar. 5, 1951.

No. 37824 (50 So. (2d) 909)

(63)

A. D. Somerville, and J. G. Colson, for appellant.

Alfred Stoner, for appellee.

Kyle, J.

Mrs. Daisy P. Wright, the appellee, plaintiff in the court below, brought suit against Wm. Morgan Kimbrough, the appellant, defendant in the court below, upon a judgment rendered by the circuit court of Leflore County on May 25, 1942, against the appellant and in favor of the appellee, for the sum of $92,091.43. A copy of the judgment was filed as an exhibit to the plaintiff's declaration.

The defendant filed an answer to the declaration, and in his answer alleged that the judgment sued on was void for the reasons set forth in the answer and the special pleas incorporated in and made a part of the answer. The plaintiff, by way of replication to the affirmative defenses set up in the answer, gave notice of special matters which she expected to prove in controversion of the defenses set up in the answer. The defendant then filed a motion in the nature of a demurrer to the special matters set

up by the plaintiff in her replication, and the cause was set down for hearing upon the defendant's motion in the nature of a demurrer to the special matters set up in the plaintiff's replication. The court, after hearing the arguments of the attorneys for the respective parties, held that the declaration and the special matters set up in the plaintiff's replication to the defendant's answer made out a case for the plaintiff; and the court overruled the defendant's motion in the nature of a demurrer to the plaintiff's replication. The defendant refused to plead further, and judgment was rendered for the plaintiff for the amount shown to be due, which was the amount of the original judgment plus unpaid interest accrued thereon. From that judgment the defendant has appealed to this Court.

The judgment sued on in the plaintiff's declaration and much of the defensive matter set forth in the defendant's answer were under review by this Court in the case of Kimbrough v. Wright, Miss., 22 So. (2d) 158, which was before this Court on appeal from the chancery court of Leflore County in 1945. A copy of the record in the chancery court suit has been made a part of the record in this case; and for a proper understanding of the issues presented by the pleadings filed in the case that we now have before us it is necessary that a brief statement be made of the facts disclosed by the records in the two cases.

Wm. Morgan Kimbrough was adjudged non compos mentis by the verdict of a jury of inquiry and a decree of the chancery court of Hinds County on April 25, 1932, and was ordered to be confined in the state hospital for the insane. His wife, Mrs. Genevieve J. Kimbrough, was appointed guardian of the estate of Wm. Morgan Kimbrough by a decree of the chancery court of Leflore County on May 12, 1932.

For many years prior to the adjudication of insanity, Kimbrough had been indebted to Mrs. Daisy P. Wright for large sums of money loaned to him by Mrs. Wright, and the indebtedness was secured by mortgage deeds of

trust on real property owned by Kimbrough and situated in the City of Greenwood. The notes and deeds of trust were renewed by Kimbrough from time to time, and in 1924 Kimbrough assigned to Mrs. Wright several life insurance policies issued on his life as additional security for the payment of his indebtedness to her. These life insurance policies represented death benefit claims amounting to approximately $46,500, and most of them provided for total disability payments in the event the insured became totally and permanently disabled. In 1930, for the purpose of satisfying Mrs. Wright's business agent and to forestall foreclosure of the mortgage deeds of trust at that time, Kimbrough authorized Mrs. Wright's business agent to collect the rents on the business properties covered by the above mentioned mortgages and to apply the net proceeds to the payment of the principal and interest on the indebtedness due and owing to Mrs. Wright.

After Kimbrough had become physically and mentally disabled in 1932, disability benefits became payable under the terms of the life insurance policies which had been assigned to Mrs. Wright as additional security for the indebtedness due and owing by him to her. Mrs. Wright collected the monthly payments, and out of the funds thus received made an allowance to the guardian to help take care of the living expenses of Kimbrough and his family, and credited the balance of such monthly payments upon the indebtedness due and owing to her.

After qualifying as guardian of her husband's estate in 1932, Mrs. Genevieve J. Kimbrough, as guardian, applied to the chancery court for authority to rent the real estate owned by the ward and to permit the rents to be paid to Mrs. Wright, to be credited upon the indebtedness due and owing to her. Authority was granted by the court. And out of the gross rents received from the business properties Mrs. Wright paid the taxes, insurance and costs of repairs and upkeep of the properties, and

then credited the net balance of the income from the properties upon the mortgage indebtedness.

At the time of his adjudication of insanity, Kimbrough's indebtedness to Mrs. Wright aggregated the sum of approximately $85,000. The indebtedness was evidenced by one note for the sum of $35,953.70, dated December 23, 1927, and due one year after date, one note for the sum of $45,000, dated October 18, 1930, and due one year after date, and one note for $5,728.94, dated December 4, 1928, and due one year after date. All of the above mentioned indebtedness was secured by the mortgage deeds of trust on the real property hereinabove mentioned and the assignments of the insurance policies. In addition to the indebtedness due and owing to Mrs. Wright, Kimbrough was also indebted to Mrs. Mamie Locke and Mrs. Mary Louise Lamalle in the sum of $15,000 for the unpaid balance of the purchase price of the most valuable parcel of real estate embraced and included in the mortgage deeds of trust held by Mrs. Wright.

The guardian applied to the chancery court from time to time for authority to execute renewal notes and mortgage deeds of trust for the indebtedness due and owing to Mrs. Wright by Kimbrough, so as to avoid the bar of the statutes of limitation; and the necessary orders were granted by the court.

The total amount of the net rents and disability benefit payments received by Mrs. Wright and applied upon the mortgage indebtedness due and owing to her were insufficient to pay the interest accruing upon the mortgage indebtedness; and on January 8, 1942, the trustee in the mortgage deeds of trust foreclosed the mortgages by a trustee's sale of the properties described in the deeds of trust. At the foreclosure sale Mrs. Wright became the purchaser of the properties for the sum of $32,205. The net proceeds of the sales were applied to the payment of the notes secured by the mortgage deeds of trust.

After the foreclosure of the mortgage deeds of trust, Mrs. Wright and her attorney wished to reduce her claim for the balance due and owing to her by Kimbrough to a judgment without any unnecessary delay, to avoid the bar of the statute of limitations. But a controversy arose between Mrs. Wright and the guardian as to the exact amount of the balance due and owing to Mrs. Wright by Kimbrough after the proceeds of the sales of the mortgaged properties had been applied upon the indebtedness, and negotiations were carried on for a period of several weeks between Mrs. Wright and her attorney, and the guardian and her attorney, before a satisfactory adjustment of the differences between them could be arrived at. Mrs. Wright and her attorney insisted that the amount of the deficiency for which Mrs. Wright was entitled to recover a judgment was $92,091.43. And to bring about an agreement which would enable her to obtain a deficiency judgment for the balance due and owing to her, Mrs. Wright agreed to convey and release to Kimbrough the residence property in the City of Greenwood which had been included in the mortgage foreclosures, and which embraced the family dwelling house and a certain parcel of residential property which Kimbrough later sold to Mrs. Hattie Blair Gilpin, and Mrs. Wright further agreed to release from the operation of the lien of the judgment which she was to obtain against Kimbrough all of the above mentioned residence property and all other real estate then owned by Kimbrough and in his possession and all property that Kimbrough might acquire by inheritance from his father. Mrs. Wright also made a qualified oral agreement to pay to Kimbrough out of the monthly benefit payments which she received under the insurance policies the sum of $175 per month, so long as the amount of the benefit payments received by her under the insurance policies amounted to $470 per month.

After the terms of the above mentioned compromise settlement had been agreed to by Mrs. Wright and the

guardian, Mrs. Kimbrough, as guardian, filed a petition in the chancery court asking for authority to consent to the entry of a judgment for the sum of $92,091.43 against Kimbrough and in favor of Mrs. Wright. The matter was heard before the chancellor upon the petition of the guardian and proof taken before the chancellor on March 23, 1942, and at the conclusion of the hearing the chancellor signed a decree which recited that, after the allowance of a credit for the amount received from the proceeds of the sale of the property under foreclosure, there was still due and owing by Kimbrough to Mrs. Wright the sum of $92,091.43, and that Mrs. Wright was entitled to recover a judgment for that amount, and that Mrs. Wright was willing to execute a deed of gift to Kimbrough, after a deficiency judgment for that amount had been entered, conveying and releasing to Kimbrough the above mentioned residence property, but that said residence property would not be conveyed to Kimbrough "until after this decree is entered"; and in the decree the court authorized and directed that the guardian make no defense against a suit filed by Mrs. Wright to recover a judgment for the above mentioned deficiency. The foregoing order was approved by the guardian's attorney and was signed by the chancellor on March 23, 1942.

For the purpose of carrying out the provisions of the above mentioned compromise settlement, Mrs. Wright, immediately after the signing of the above mentioned decree, executed and delivered to Kimbrough a deed of conveyance of the two parcels of residential property, situated in the West Kimbrough Addition of the City of Greenwood, and on March 24, 1942, Mrs. Wright executed a formal instrument of writing in which she agreed that the judgment, which was to be entered against Kimbrough under the terms of the above mentioned decree, should not constitute a lien upon the residential property which she had agreed to convey to Kimbrough, and that the judgment should not constitute a lien upon any prop-

erty that Kimbrough might inherit from his father, or any real estate that Kimbrough might thereafter acquire.

Mrs. Wright then filed suit in the circuit court against Kimbrough to recover a judgment for the above mentioned sum of $92,091.43. Process was duly issued and served upon Kimbrough and his guardian more than thirty days prior to the first day of the May term of the court, and on May 25, 1942, a default judgment was entered against Kimbrough for the above stated amount. The judgment contained a recital that the chancery court on March 23, 1942, upon the petition of the guardian and proof taken, had authorized and directed the guardian to consent to the judgment.

On March 24, 1943, Kimbrough filed a petition in the chancery court asking that his legal disabilities resulting from the adjudication of insanity be removed and that he be restored to the right to manage his own affairs without the aid or intervention of a guardian. The court upon the hearing of the petition found that Kimbrough was capable of managing his own affairs, and the court entered a decree restoring to him all of his legal rights, including the right to manage his own property and estate, and terminating the guardianship. On February 5, 1944, Kimbrough sold and conveyed to Mrs. Hattie Blair Gilpin for the sum of $3,000 a part of the land which had been conveyed and released to him by Mrs. Wright as a part of the compromise settlement which had been made for him by his guardian prior to the entry of the default judgment in 1942.

On July 3, 1944, Kimbrough filed a bill in the chancery court of Leflore County against Mrs. Wright in which he attacked the validity of the indebtedness secured by the mortgage deeds of trust which had been foreclosed by the trustee in 1942 and the validity of the deficiency judgment rendered against him on May 25, 1942. In his bill of complaint, and in his amended bill which was filed a few weeks later, Kimbrough alleged that the guardian in all her transactions with Mrs. Wright during

the guardianship had been overreached; that the foreclosure of the mortgage deeds of trust and the procurement of the deficiency judgment a few weeks later were parts of a fraudulent scheme on the part of Mrs. Wright to deprive Kimbrough of his entire estate at a time when he was non compos mentis and totally and permanently disabled from performing any kind of work; that most of the indebtedness alleged to have been due and owing by Kimbrough to Mrs. Wright at the time of the foreclosure of the mortgages and the entry of the default judgment was void for the reason that the notes evidencing the indebtedness which had been executed by him prior to the adjudication of insanity were barred by the 6-year statute of limitations, Code 1942, Section 722, at the time the guardian undertook to execute renewal notes therefor; and that no part of the alleged balance represented by the deficiency judgment was due or owing by Kimbrough to Mrs. Wright, for the reasons that the notes were never probated in the guardianship as claims against his estate and the claims for the balances alleged to be due on the notes were barred by the 4-year statute of limitations at the time the judgment was entered, and that the amounts claimed to have been advanced by Mrs. Wright to the guardian had not been advanced for maintenance and support and did not represent valid claims against the ward's estate.

The complainant, in his original and amended bills, asked for the cancellation of the assignments of the above mentioned insurance policies to Mrs. Wright, and for the cancellation of the above mentioned deeds of trust, which had been executed during the period of the guardianship, and for the cancellation of the judgment for $92,091.43 rendered by the circuit court on May 25, 1942, and for the cancellation of all claims of Mrs. Wright to the properties which had been conveyed to her by the trustee in the foreclosure of the mortgage deeds of trust. Kimbrough also asked that an account be stated between him and Mrs. Wright covering the entire period from

April 25, 1932, to the date of the filing of such account.

Mrs. Wright answered the amended bill of complaint and in her answer incorporated a plea of special matters in bar of the relief prayed for in the amended bill and also a special demurrer. In her answer Mrs. Wright denied that any of the indebtedness which was secured by the mortgage deeds of trust at the time of the foreclosure sales of the property was barred by the statute of limitations. She denied that the foreclosure of the mortgages was a part of a fraudulent scheme on her part to acquire Kimbrough's property while he was under the disabilities of insanity, as charged in the amended bill of complaint; and she denied that the guardian had been overreached in any of her dealings with Mrs. Wright. Mrs. Wright in her answer gave an account of the negotiations which had been carried on for a period of several weeks between her and the guardian for a satisfactory adjustment of the differences between them so that she might obtain a deficiency judgment against Kimbrough for the amount of the balance of the indebtedness due and owing to her after the foreclosure of the mortgages on the real estate; and in her answer she alleged that the default judgment had been entered against Kimbrough in 1942 with the consent of the chancellor and after the service of legal process upon the ward and his guardian, and that the judgment was binding upon the ward.

In her plea of special matters in bar of the suit Mrs. Wright set up the compromise settlement which had been negotiated and agreed to by her and the guardian after the foreclosure of the mortgages and prior to the entry of the default judgment, and pleaded the same as an accord and satisfaction. Mrs. Wright also alleged in her plea that no appeal had been taken from the default judgment within six months next after its rendition, and that no attack had been made by Kimbrough on the judgment or the decree of the chancery court authorizing the guardian to consent to the entry of the

judgment within the year allowed by law to persons under disabilities to attack judgments or decrees after the removal of their disabilities. And Mrs. Wright in her plea in bar also alleged that Kimbrough, with full knowledge of the above mentioned compromise settlement, after the removal of his disabilities, had sold and conveyed to Mrs. Hattie Blair Gilpin a part of the property which he had acquired under the terms of the compromise settlement, and that Kimbrough had thereby ratified the compromise settlement and thereby estopped himself from attacking the validity of the judgment that had been entered against him or the decree of the chancellor authorizing the guardian to consent to the entry of the judgment.

The suit in the chancery court was tried at the October 1944 term of the court, and the court found that Mrs. Wright's pleas of accord and satisfaction and ratification and estoppel had been fully substantiated by the proof; and the court ordered that the bill of complaint and the amended bill be dismissed at the cost of the complainant, except as to one item relating to the disability benefit payments received by Mrs. Wright under the insurance policies. As to that item the court found that Mrs. Wright was obligated to release to the complainant the sum of $175 per month out of the disability benefit payments received by her, so long as the total disability benefit payments received by her amounted to $470 per month.

From that decree both parties appealed to this Court, and upon the hearing of the appeal the decree of the chancellor was affirmed on direct appeal and on cross-appeal. In the opinion written by Justice L. A. Smith, Sr., the Court held that the notes involved in the litigation in the chancery court and in the suit in the circuit court upon which the default judgment was rendered were not barred by the statute of limitations, and that the original bill and the amended bill were properly dismissed. The Court also held that the appellant, when

he sold a part of the real estate which he had received in the adjustment or compromise settlement between Mrs. Wright and the guardian, after he had been duly adjudged sui juris, had estopped himself from challenging the judicial process by which he had obtained it, whether that process be called accord and satisfaction or compromise and settlement.

In the case we now have before us, Mrs. Wright filed suit against Kimbrough in the circuit court for the purpose of renewing the judgment rendered in her favor on May 25, 1942, so as to prevent the bar of the statute of limitations. The plaintiff attached to her declaration a copy of the judgment rendered on May 25, 1942, and also an itemized statement of the disability benefit payments received by her since the date of the rendition of the judgment, which were to be applied as credits upon the judgment.

The defendant, in answer to plaintiff's declaration, alleged that the judgment was void for the reason that the appointment of Mrs. Genevieve J. Kimbrough as guardian by the clerk of the chancery court of Leflore County on May 12, 1932, was made upon an ex parte petition filed by Mrs. Kimbrough and without notice to the defendant, and that the appointment of the guardian was therefore void. The defendant in his answer alleged that the indebtedness for which the judgment was entered against him had not been probated as a claim against his estate and did not constitute a general claim against his estate, that all of the notes and deeds of trust that the plaintiff held at the time the defendant was adjudged to be of unsound mind had been barred by the statute of limitations many years before the entry of the default judgment, and that the renewal notes upon which the default judgment was based, the orders of the chancellor authorizing the guardian to execute the renewal notes and the order of the chancellor authorizing the guardian to consent to the entry of the default judg-

ment were void, because the appointment of the guardian was void. The defendant in his answer also sought to recover from the plaintiff, by way of recoupment, large sums of money which he alleged to be due and owing to him by the plaintiff on account of rents collected by her from the business properties embraced and included in the mortgages and disability benefit payments received by her under the insurance policies after the original notes had been barred by the statute of limitations.

The plaintiff in her replication to the defendant's answer gave notice that, by way of controverting the defenses set up in the defendant's answer, the plaintiff would offer in evidence the special matters alleged and proved in defense of the suit in the chancery court, which was tried at the October 1944 term of the court, and in which Kimbrough had sought to have the judgment cancelled, including the compromise settlement which had been pleaded in bar of the suit to cancel the judgment and proof of the ratification of the compromise settlement by Kimbrough after the removal of his disabilities, which the court had held constituted an estoppel against Kimbrough in his efforts to set aside the compromise settlement. And a copy of the record in the chancery court suit was filed as a part of the plaintiff's replication and made a part of the record in this case. The plaintiff also gave notice that she would offer in evidence proof that the defendant, after the rendition of the final decree in the chancery court suit, had conveyed all of the property that he had received in the compromise settlement (except the property conveyed to Mrs. Hattie Blair Gilpin in 1944) to A. R. Bew, as trustee, for the benefit of himself and his wife, and for other purposes, and that the defendant, since the entry of the final decree in the chancery court suit, had accepted the payments of $175 per month which had been made to him by the plaintiff pursuant to the provisions of that decree out of the disability benefit payments received by her under the insurance policies; and that the defendant,

by conveying the above mentioned property to A. R. Bew, as trustee, and by accepting the disability payments of $175 per month, as provided in the chancery court decree, had again ratified and confirmed the compromise settlement and had again estopped himself from attacking the validity of the judgment that had been entered pursuant to the terms of that settlement.

The defendant filed a motion in the nature of a demurrer to the matters set forth in the plaintiff's replication, and after a full hearing on the defendant's motion the court overruled the defendant's motion.

We think that the ruling of the learned trial judge on the defendant's motion in the nature of a demurrer to the matters set forth in the plaintiff's replication was correct. The issues presented in the defendant's answer and the plaintiff's replication had been settled adversely to the defendant in the decree rendered by the chancery court in 1944, which was affirmed by this Court on appeal. The question whether or not the notes which Mrs. Wright held in 1942 had been barred by the statute of limitations, and the question whether or not the default judgment entered against Kimbrough in the circuit court and the order of the chancellor authorizing the guardian to consent to the entry of that judgment were void, and the question whether or not that judgment should be cancelled, were questions which had been specifically presented by the pleadings in the chancery court suit, and which the court after a full hearing had decided adversely to Kimbrough.

It is a fundamental principle of jurisprudence that material facts or questions which were in issue in a former action, and were there judicially determined, are conclusively settled by the judgment rendered therein, and that such facts or questions become res judicata and may not again be litigated in a subsequent action between the same parties regardless of the form the issue may take in a subsequent action. 30 Am. Jur. 920, par. 178, and cases there cited; Harvison v. Turner, 116 Miss. 550,

77 So. 528; Dean v. Board of Supervisors of DeSoto County, 135 Miss. 268, 99 So. 563; Bates v. Strickland, 139 Miss. 636, 103 So. 432; Cotton v. Walker, 164 Miss. 208, 144 So. 45; and Duett v. Pine Mfg. Co., Inc., Miss., 48 So. (2d) 490.

The question as to the validity of the appointment of Mrs. Kimbrough as guardian was not raised by Kimbrough in the chancery court suit. Kimbrough in that suit asked that the compromise settlement that had been made by the guardian for him be set aside and that the judgment sued on in this case be annulled and cancelled for the reasons that the guardian had been overreached in all of her dealings with Mrs. Wright, that the original notes which had been executed by Kimbrough prior to his adjudication of insanity had been barred by the statute of limitations, and that the notes had not been probated in the guardianship as claims against this estate, and for other reasons stated in the bill of complaint. But he made no claim at that time that the judgment was invalid because of the invalidity of the appointment of the guardian, and we do not think he is in any position to raise that question as a defense to the action filed by the plaintiff in this cause. The judgment and the order of the chancellor authorizing the guardian to consent to the judgment constituted a part of the compromise settlement which this Court held that Kimbrough had ratified after he had been duly adjudicated sui juris, and Kimbrough is now estopped from challenging the validity of the judgment on the ground that the appointment of the guardian in 1932 was void. Kimbrough v. Wright, Miss., 22 So. (2d) 158. For that reason it is not necessary that we determine the question as to the validity of the appointment of Mrs. Kimbrough as guardian in this case.

Upon the merits of the question as to the validity of the appointment of the guardian, however, we do not think that the appointment of the guardian was void. The record shows that the adjudication of insanity was

made upon due notice to Kimbrough, and that Kimbrough was personally present before the court when the adjudication was made in the chancery court of Hinds County on April 25, 1932. The decree of the chancery court of Hinds County showed that Kimbrough had been brought before the court on a writ of lunacy, that a jury had been empanelled and sworn, and that the jury, after examining Kimbrough and hearing the evidence, found that he was insane and that he was at that time confined in the State Insane Hospital, at Jackson, and that such confinement should be continued. The decree further recited that Kimbrough was possessed of an estate consisting of real and personal property in Leflore County, and that because of his mental disability he was incapable of taking care of his property and managing the same, and that a guardian should be appointed. A certified copy of that decree was attached to the petition of Mrs. Kimbrough, asking for her appointment as guardian of Kimbrough's estate, which was filed in the chancery court of Leflore County on May 12, 1932.

Section 1894, Code of 1930, Section 430, Code of 1942, provides that the chancery court may appoint guardians to persons adjudged upon inquisition to be of unsound mind, upon its own motion, or upon application of a relative or friend. The statute does not require that notice of the application for the appointment of a guardian be given to a person who has been adjudicated upon inquisition to be of unsound mind, and there is no good reason why such notice should be required in cases where the appointment is made immediately after the adjudication of insanity.

In the case of Foran v. Healy, 73 Kan. 633, 85 P. 751, 86 P. 470, and in the case of Walker v. Graves, 174 Tenn. 336, 125 S. W. (2d) 154 the question as to the requirement of notice in such cases has been fully discussed and the decisions have been carefully analyzed.

In the case of Foran v. Healy, supra, the original commitment had been in another county and by a different

court, and a certified copy of those proceedings had been filed in the county court making the appointment of the guardian. Finding that no notice had been given to the insane man, then in the state hospital, the court said: "In the absence of statutory requirements no notice is necessary to confer authority upon a probate court to appoint a guardian, either for a minor, or a lunatic who has been duly adjudged to be a person of unsound mind. Kurtz v. St. Paul & D. R. R. Co., 48 Minn. [339], 342, 51 N. W. 221, 31 Am. St. Rep. 657; Swope's Adm'r. v. Frazier's Com., 37 S. W. 495, 18 Ky. Law Rep. 649; Heckman v. Adams, 50 Ohio St. 305, 34 N. E. 155; Leffel v. Knopp, cited in Heckman v. Adams, supra, but not reported; Van Matre v. Sankey, 148 Ill. 536, 36 N. E. 628, 23 L. R. A. 665, 39 Am. St. Rep. 196.

"In the case of Heckman v. Adams, supra, the lunatic was regularly adjudged to be of unsound mind, and was sent to the asylum for the insane. Eight months afterwards a guardian of her estate was appointed without notice. It was held that no notice was necessary; that statute not requiring it. The appointment was made because of the former adjudication, upon which the lunatic had notice. By the appointment of a guardian for the estate of a person of unsound mind no constitutional right is involved. He is not thereby deprived of any property; on the contrary, his property is protected and preserved by the court, whose ward he is, through its officer, who has been required to give bond for the faithful and honest performance of his duty."

The statute quoted in the above mentioned opinion is very similar to ours, and the reasoning and conclusions expressed in the opinion are directly applicable to the case that we now have before us.

In the case of Walker v. Graves, supra, the Supreme Court of Tennessee said:

"Conceding, as we do, that the better practice is to serve notice on the non compos mentis when application is made for the appointment of a guardian for the insane

person's property after considerable time has elapsed since his commitment,—even though the application is made in the Court which committed him, and his status remains unchanged, in fact and in legal contemplation, —we nevertheless hold, on reason and authority, that omission of such notice does not render the order of appointment void. This is a defect and irregularity because of which the order of appointment may be reviewed and set aside, either by the Court of action, or on appeal, if injustice has resulted, upon the application of those who are adversely affected." [174 Tenn. 336, 125 S. W. (2d) 160.]

We do not think that the failure of the record to show that notice was given to Kimbrough of the application of Mrs. Kimbrough for appointment as guardian rendered her appointment void.

For the reasons hereinabove stated the judgment of the circuit court is affirmed.

Affirmed.