HARVISON  *v.*  TURNER.

[77 South. 528, Division A.]

1. JUDGMENTS. *Res judicata. Issues not decided.*
Even though the relief sought in a second suit may be different from that asked in the first suit, yet where the causes of action are substantially the same the question is *res judicata.*

2. SAME.
   Where the pleadings in a case present issues involved in such case, which might have been litigated therein, as well as those actually litigated, they are res judicata.

3. SAME.
   All issues which under the pleadings, might have been decided in a suit, are res judicata, whether they were litigated or not, and even though the court failed through inadvertence or mistake to pass on some of the issues.

APPEAL from the chancery court of Perry county. HON. W. M. DENNY, JR., Chancellor.

Bill in equity by L. E. Turner against W. D. Harvison. From a decree overruling a demurrer to the bill, defendants appeal.

The facts are fully stated in the opinion of the court.

*Q. S. Heidelberg* and *Hannah & Foote,* for appellant.

We, respectfully, submit that the questions involved in this record are the same identical questions that were involved in the case of *Harvison* v. *Turner* in the chancery court of Perry county and that the adjudication of said case precludes the right of appellee here.

The doctrine of *res judicata* as laid down in 23 Cyc., 1215, is: "A fact or question which was actually and directly in issue in a former suit, and was there judicially passed upon and determined by a domestic court of competent jurisdiction, is conclusively settled by the judgment there in so far as concerns the parties to that action and persons in privity with them, and cannot be again litigated in any future action between such parties and privies, in the same court or in any other court of concurrent jurisdiction upon the same or a different cause of action."

A reference to the pleadings in the cause of *Harvison* v. *Turner,* and the pleadings in the case at bar shows that the only difference in parties in these cases is that the wife of Harvison is a party to the former pro-

ceedings. The pleadings reflect that she has no interest in the controversy and that within the meaning of the rules laid down as to former adjudication, the parties in these two proceedings are identical.

An analysis of the pleadings in these two cases reflects that the facts and cause of action therein stated are practically the same and identical and we submit that because the relief asked in one is different from relief asked in the other does not relieve the appellee from the burden of the former adjudication. 32 Cyc., pages 1168-9.

The above rule is supported in Mississippi by the case of *Burkett* v. *Burkett,* 81 Miss. 83, 33 So. 417.

Even if it be admitted that this identical point was not directly passed upon, or adjudicated, we still submit that appellee is bound by the judgment in said case. 23 Cyc., 1170.

The above doctrine is supported in Mississippi by the case of *Hubbard* v. *Flynt,* 58 Miss. 266, in which case it is said, page 270: "There is no distinction between this and the matter involved, in the record of the former case, and which being so involved, might have been litigated and decided, and which is held to be a matter adjudicated because it might have been." The above doctrine is supported by *Stewart* v. *Stebbens,* 30 Miss. 66.

The law as laid down in *Hubbard* v. *Flynt,* is cited with approval in the case of *Hardy* v. *O'Pry,* 102 Miss. 197, 79 So. 73. But even conceding that the issues are not the same, and conceding that the relief asked in the two is not the same, yet we submit that the appellee is bound just the same. 23 Cyc., 1169.

In the consequence we submit that the trial court erred in overruling the demurrer; that the same should have been sustained and the bill of complaint dismissed.

*Stevens & Cook,* for appellee.

The controversy in the first suit, was over the note and the question of its payment or non-payment, and the

court was necessarily confined to the determination of that particular controversy, and the decree rendered adjudicates that the note was paid, as contended by Harvison, and that the lien securing it upon the records therefore ought to be cancelled and Turner denied a decree for any balance on the note itself. Turner was suing in his cross-bill, as above indicated, for an alleged balance due on a promissory note. Now in the case before the court, the present suit, he is suing for timber which he alleges Harvison cut and sold through the Jeff Griffis Mercantile Company after he had sold the selfsame timber standing on the land to Turner in settlement of the said note. The cause of action in the former suit and in the latter suit are entirely different. The case of *Hardy* v. *O'Pry,* 102 Miss. 197, cited by counsel for appellant is absolutely conclusive against appellant in this suit.

The court in the case just cited, says: "It is true those things which might have been litigated, as well as those things actually litigated in the first suit are *res judicata;* but this means those things "involved in the record of the former case, and which, being so involved, might have been litigated and decided," etc. *Hubbard* v. *Flint,* 58 Miss. 266. And, moreover, when the cause of action in the two suits is different only those things are concluded by the first judgment which were actually in issue in the suit in which it was rendered. *Scully* v. *Lowenstein,* 56 Miss. 652; 23 Cyc., 1297; 24 Am. & Eng. Ency. Law (2 Ed.), 782."

There is no merit in the contention of counsel for appellant that: "If it is to be considered independent of said transaction the proper forum for appellee here was to the circuit court on a charge of trespass and we submit that he has neither right nor remedy in this court."

It will be borne in mind by the court in considering this contention of counsel, that the bill of complaint not only seeks a decree against Harvison for the appropri-

ation of Turner's timber but seeks to have Turner subrogated to the lien of the Jeff Griffis Mercantile Company under its trust deed, which deed of trust was satisfied as to the Jeff Griffis Mercantile Company only by the appropriation thereto of the proceeds of Turner's timber. The remedy of subrogation and the prayer therefor gives the chancery court jurisdiction, and especially so since the bill of complaint further shows that Harvison is insolvent and that Turner is without remedy unless he is subrogated to the Jeff Griffis Mercantile Company's deed of trust on the Perry county land. Counsel for appellant make no contention that we do not make out a proper case for subrogation if we have a claim against Harvison which was not adjudicated in the former suit. They rely upon the defense of *res adjudicata* only.

We submit that the learned chancellor below was correct in his decree overruling the demurrer in this case and that the decree should be affirmed.

SYKES, J., delivered the opinion of the court.

The appellee here, L. E. Turner, complainant in the lower court, filed an original bill in the chancery court of Perry county against W. D. Harvison. The bill, in substance, alleges that Turner sold to Harvison some land in Green county for the sum of three thousand dollars; that to secure the payment of the purchase price, appellant Harvison gave his note for the purchase price, three thousand dollars, payable three years after date. A vendor's lien was reserved in the deed to the land in Green county. Harvison and wife, also to secure the payment of the note, executed and gave a deed of trust on some timber on lands owned by them in Perry county. Subsequent to the execution of the deed of trust on the standing timber on the lands in Perry county, Harvison gave a deed of trust upon the land and the timber in Perry county to the Jeff Griffis Mercantile Company, to secure an indebtedness of five

hundred dollars.  The bill further alleges: That after
the execution of this second deed of trust the mercantile
company, acting for Harvison, induced the appellee,
Turner, to release and cancel his lien upon the timber
in Perry county upon the payment to Turner of two
hundred dollars by the mercantile company. This pay-
ment was made, and a credit for this amount was given
on the three thousand dollar note of appellant.. That
after the appellant, Harvison, had procured through the
mercantile company a cancellation of appellee's deed of
trust, he entered upon the lands in Perry county and
cut all the remaining merchantable timber and sold it
through the mercantile company for the sum of seven
hundred and fifty dollars, and applied this sum to the pay-
ment of the mercantile company's deed of trust. The bill
further alleges that the timber in Green county was sold
by Harvison to the Richton Lumber Company for the sum
of one thousand dollars, and this one thousand dollars
was paid to appellee, Turner, and credited by him on
the note for three thousand dollars, the two sums for
which the timber had been sold on the lands in Green
and Perry counties making a total of one thousand
two hundred dollars paid on the note through the sales
of timber, and leaving a balance due appellee Turner of
one thousand, two hundred and ninety-four dollars and
ninety-two cents.  The bill then sets up the history of
a previous litigation between these same parties in
Perry county.  In that bill the appellant, Harvison, was
the complainant, and appellee, Turner, defendant.  The
original bill, answer, and cross-bill, answer to cross-bill,
and decree in the Perry county case are all made ex-
hibits to the original bill in this case.  It is then averred
that the chancery court of Perry county, in the first
suit in which Harvison was complainant, found and
decreed that Turner became the owner of the timber in
Perry county by purchase from the defendant.  It is
then alleged that appellee, Turner, never sold or parted
with the title to the timber, which the court in Perry
county had held that he had acquired from the appel-

lant, and that the appellant had entered upon the lands in Perry county and cut and removed the timber, and that the appellee, Turner, is entitled to recover the value of said timber, which amounts to about one thousand dollars.

It is alleged that Harvison owns no property except the tracts of land in Green and Perry counties; that the Green county land is a homestead and exempt from execution. It is alleged that the Perry county lands had been relieved of the deed of trust of the mercantile company solely by the sale of the timber on the lands through this company and the application of the proceeds of the sale to the payment of its deed of trust; that Harvison is trying to sell the Perry county lands or to secure a loan by mortgaging them; that if either is done, Turner would be without remedy on account of the insolvency of Harvison. It is then alleged that Turner is entitled, not only to a decree against the defendant for the value of the timber cut by him from the Perry county lands, but is entitled to be subrogated to the lien of the deed of trust of the mercantile company. The prayer is for this subrogation and a decree for the value of the timber so cut and removed from the Perry county lands by Harvison.

To this bill of complaint a demurrer was interposed by Harvison, in which it is alleged, among other things, that the bill and exhibits show that all the matters alleged in the bill were adjudicated in the first litigation in the chancery court of Perry county. The chancellor overruled the demurrer, and from that decree this appeal is prosecuted.

It therefore becomes necessary for us to set out in substance the material allegations and denials contained in the bill and answer in the first Perry county litigation, and also the decree in that case, from which no appeal was prosecuted, in order to determine whether or not the issues presented by the bill were or should have been adjudicated.

In the original bill filed by Harvison and wife in the chancery court of Perry county, the history of the purchase of the lands in Green county, the reservation of a vendor's lien on said lands, and the giving of a deed of trust on the timber in Perry county are all set forth in detail, and admitted by Turner, the defendant in that suit. The bill then alleges in great detail facts which led up to Harvison selling to Turner all of the merchantable timber on the Green and Perry county lands for the amount due to Turner by Harvison, and that Turner bought the timber for the balance due him and agreed to cancel the vendor's lien in Green county and the deed of trust on the timber in Perry county; that Turner was to execute a new deed to the Green county land, freed of the vendor's lien; that in pursuance of this agreement, Turner entered upon the Perry county lands, cut down and removed, sold and converted into money, most of the timber on this land, and that he (Turner) sold the remainder of the timber to the Jeff Griffis Mercantile Company and executed to said mercantile company a writing duly conveying this timber. It is then alleged that Turner "cut and removed from the said lands in Perry county under the aforesaid contract and agreement, within sixty days, or within a short time from the time of making said contract for the sale of all of the said timber to him, all the merchantable timber thereon except a small part, and that he sold and conveyed the remainder thereof to the Jeff Griffis Mercantile Company and received pay therefor, and that defendant has gotten off and received pay for all of the merchantable timber being on the aforesaid lands in Perry county." The bill then alleges that Turner sold the timber on the land in Green county. It is then alleged that Turner failed to deliver to Harvison the three thousand dollar note and the new deed to the land in Green county, and failed to cancel the deed of trust in Perry county. It is then alleged, a third time, that Turner went upon the lands in Perry county and cut

and removed and sold thereform nearly all of the mer-
chantable timber thereon and sold and conveyed the re-
mainder thereof. It is also then alleged that the deed
of trust on the timber in Perry county has become ex-
tinguished by the payment as above set out, and should
be canceled.

The answer of Turner denied that he purchased the
timber on the lands in Green and Perry counties, as
specifically averred in the bill. It denies that Turner
entered upon the land in Perry county and cut down
and removed and converted into money most of the
timber. Denies that he cut and removed any timber
on the Perry county lands. Denies that defendant ex-
ecuted to the Jeff Griffis Mercantile Company a writing
conveying the balance of the timber on the Perry
county lands. In short, the answer in detail denies the
material allegations as to the selling, cutting, and re-
moving of the timber on the lands in both Green and
Perry counties. Denied that the note had been paid,
but averred that a balance of one thousand, two hun-
dred ninety-four dollars and ninety-two cents was
due. It avers that complainant and defendant entered
into an agreement that certain timber was to be cut and
the proceeds from the sale of same applied as a credit
on the note; that Turner agreed to relinquish his prior
lien on the Perry county land, provided the mercantile
company would pay Turner two hundred dollars to be
applied on this note; that this arrangement was made
in the interest of Harvison. Denies that he promised,
while the timber was being cut on the Perry county
lands, that he would deliver the three thousand dollar
note to Harvison. The cross-bill of Turner alleges, in
short, that Harvison made arrangements with certain
parties whereby he sold the timber to them in these
counties, and that the net proceeds of this timber was to
be applied on the three thousand dollar indebtedness,
and that Turner agreed to this arrangement, and that
certain payments were made and credited on the note,

leaving a balance due of the amount above set out; that this arrangement was only partially carried out. The cross-bill prays that the court decree that Harvison and wife are indebted to Turner in the sum of one thousand, two hundred ninety-four dollars and ninety-two cents, and that this indebtedness is a lien upon the lands in Green county, and that if the amount due be not paid, the lands be condemned and sold, and for general relief, etc. The decree of the court shows that the case was heard upon pleadings and oral testimony, and it was decreed that the complainants, Harvison and wife, were entitled to the relief prayed in the original bill; that the promissory note of three thousand dollars had been paid and settled in full and that nothing remained due or owing thereon to Turner, and that said note be canceled and the vendor's lien on the Green county land be canceled. It was further ordered that the deed of trust on the timber in Perry county be canceled and set aside. The decree did not find that Turner owned the timber on either tract of land at that time.

It is the contention of the appellee, Turner, that the only issue presented in the first suit was whether or not Harvison had been paid the balance due on the Green county lands by sale of the timber on the Perry and Green county lands to Turner, and that the court by decreeing that the note had been paid necessarily held that it was paid by the sale of this timber to Turner, and that therefore Turner was the owner of the timber, and that Harvison was liable to him for the value of any timber sold from these lands by Harvison after the sale of the timber by Harvison to Turner. We think this is entirely too narrow a view to take of the issues in the first case. It was not only alleged in the original bill filed by Harvison and wife that these notes had been paid and settled by a sale of the timber to Turner, but it was further alleged that Turner himself had cut and removed most of the timber from the

Perry county lands and had sold the remainder of the timber to the Griffis Mercantile Company. In other words, the bill alleged, by the removal of most of the timber by Turner and the sale of the balance of it by Turner to Griffis, in effect, that Turner had thereby parted with any right or title, or with all right or title, held by him to this timber on the land in Perry county. These allegations of the bill were specifically denied in the answer. There was not only an issue as to whether or not the purchase price of the Green county lands had been paid, but also an issue as to the title of and equities in the timber in both Green and Perry counties. These issues were clearly made in the pleadings. The chancellor was called upon in that case to pass upon the question as to whether or not Turner had any interest, either as beneficiary in a trust deed, as owner, or any other equitable interest, in the Perry county timber. If he had so found, then he should have protected this interest of Turner in his decree. We are of opinion that this question was actually and directly in issue in the first suit, and therefore that it cannot be relitigated here. 23 Cyc. 1215. Even though the relief sought may be different from that asked in the first suit, yet where the causes of action are substantially the same, the question is *res judicata*. 23 Cyc. pp. 1168-1170; *Burkett* v. *Burkett*, 81 Miss. 593, 33 So. 417; *Hubbard* v. *Flint*, 58 Miss. 266. Where the pleadings in a case present issues involved in said case which might have been litigated therein, as well as those actually litigated, they are *res judicata*. *Hardy* v. *O'Pry*, 102 Miss. 197, 59 So. 73. It would therefore follow that, even if the lower court in the first case, through inadvertence or mistake, failed to pass upon the title and equities to the timber in Perry county, since it was a matter in issue in the pleadings and proper to decide in order finally to dispose of the litigation between these parties, by the decree it became *res judicata*. We therefore hold that the question presented in the pres-

Oct., 1917]    Tolsom *v.* Ill. Cent. R. R. Co.    561

116 Miss.]                    Syllabus.

ent bill was an issue and was decided in the first Perry county suit, and is therefore *res judicata.* It was error in the court below to overrule the demurrer of appellant.

*Reversed and remanded.*