Lusk-Harbison-Jones, Inc., *v.* Universal Credit Co.

(Division B. Jan. 30, 1933.)

[145 So. 623. No. 30351.]

**Percy, Strauss & Kellner,** of Greenville, for appellant.

Farish, Bell & Felts, of Greenville, for appellee.

Argued orally by **Ernest Kellner**, for the appellant.

**Griffith, J.,** delivered the opinion of the court.

During the years herein mentioned, appellant was the authorized agent for Ford automobiles at Leland and adjacent territory. Appellee is a dealer in automobile paper; that is to say, it advances the cash to the local distributors of automobiles on the conditional sales contracts and notes of the purchasers evidencing deferred installment payments. It would appear from the record

that appellee is a subsidiary of the Ford company. In any event, it works in close connection with that company and its local distributors. In 1929 three, and in 1930, two, sales contracts were purchased by appellee from appellant. Under these contracts appellant guaranteed the payment of the full amount of the installments. At different times during the latter part of 1930, default in the installment payments were made by the purchasers under each of the five conditional sales contracts, and, by authority of the terms thereof, the five automobiles were repossessed.

There was no available market for these repossessed cars, and it was deemed to be to the best interest of both the parties hereto that appellant should repair and recondition the cars and hold them in its possession until the times might improve and a more favorable market condition might be found for resale. The cars were therefore allowed by appellee to be repaired and reconditioned by appellant and thereupon to remain in appellant's possession, but appellant was required to execute and did execute a written agreement for each of the five repossessed cars confirming the fact that the title was and remained in appellee, and that appellant had taken and would hold the automobiles for appellee, but at appellant's "sole risk as to all loss or injury." Nothing was said in the said written agreement about insurance.

In October, 1931, while still in appellant's possession, the five automobiles were destroyed by a nonnegligent fire. Appellant had no insurance on the five cars, and it is the claim of appellee that it had none. Appellee thereupon sued appellant for the balance due on the five vehicles, and recovered judgment.

Effective on January 1, 1931, appellee had issued to Ford distributors what is termed Confidential Pamphlet B. In this pamphlet there is contained the following paragraph: "Dealer Protection on Repossessed Cars: In

cases where a car is repossessed by the dealer and/or U C C, insurance protection for the dealer's interest will continue in force from the date of physical possession until the account is liquidated, after which the dealer should provide such coverage as he may require.'' After this pamphlet came out, the matter of insurance was the subject of interviews between appellant and the authorized representatives of appellee, and on each occasion, when discussed, appellant was advised by these agents of appellee that appellant should not carry or attempt to carry any insurance on these repossessed cars; that appellee would carry the insurance and that this was one of the purposes of pamphlet B to announce. The proof of these statements, representations, and advice to appellant by the agents of appellee was received without any objection by appellee, nor was any intimation advanced that these agents were not authorized in the premises.

Appellee contends that the representations or statements of its agents, as above mentioned, are of no force here for three asserted reasons: First, that pamphlet B did not apply to sales and sales contracts upon which defaults had occurred or where the repossession had taken place prior to January 1, 1931; and, second, that the statements and representations of appellee's agents that appellant should not take insurance and that appellee was carrying and would continue to carry insurance on the repossessed cars here involved are not to be allowed to be effective, because this would modify by oral evidence the previous written agreement between the parties that appellant would hold the cars at appellant's ''sole risk as to all loss or injury;'' and, third, that such a modification would be without any consideration to support it.

As to appellee's first contention, pamphlet B is not clear and free from doubt upon an examination of its

entire contents that it refers only to sales and sales contracts made on and after January 1, 1931. But, if otherwise, that question is absorbed in what is said in respect to the second contention, as to which second contention we have only to apply the rule, well settled generally and in this state, that a subsequent oral agreement to modify a prior written contract is valid and proof thereof does not violate the parol evidence rule, especially where the subsequent agreement is acted upon. 3 Jones on Evidence (2 Ed.), section 1500 et seq., and authorities there cited. Moreover, we have already called attention to the fact that the written agreement relied on by appellee makes no mention of insurance.

Upon the third point that no consideration is shown for the alleged agreement that appellee would carry the insurance, we bottom our conclusion upon the fact that appellant acted upon the statements made by appellee that the latter had the insurance and would continue to carry it; a very reasonable course on the part of appellant and about which if appellant had acted otherwise there might have arisen the question of unauthorized double concurrent insurance on the same property, and upon the well-recognized principle applicable to such a situation, which has been summarized in A. L. I. Restatement of the Law of Contracts, vol. 1, p. 110, as follows: "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action and forbearance is binding if injustice can be avoided only by the enforcement of the promise." We are mindful that the principle just stated is one to be applied with caution and only when the facts are well within it; but here the parties had each an insurable interest in the property, and the evidence in the record is not only to the effect that appellee's agents after January 1, 1931, represented that

appellee had the insurance, but the statements and representations made were equivalent to a promise to continue that insurance in force; and the promisee having reasonably relied thereon, the promise can only be enforced by casting the loss on the promisor, if, in fact, the promisor contrary to the promise carried no insurance.

Reversed and remanded.