HATTIESBURG PRODUCTION CREDIT ASS'N *v.* SMITH.

(In Banc. April 28, 1941. Suggestion of Error Overruled, June 14, 1941.)

[1 So. (2d) 768. No. 34480.]

R. E. Spivey, Jr., of New Orleans, La., for appellant.

**T. B. Davis**, of Columbia, and **E. J. Currie**, of Hattiesburg, for appellee.

**Roberds, J.**, delivered the opinion of the court.

Appellant appeals from a judgment, upon a jury verdict, in favor of appellee, for $700 damages, as claimed by appellee, resulting from the wrongful seizure and sale by the trustee of personal property conveyed by a trust deed executed by appellee to secure payment of an indebtedness to appellant. The trustee was not a party to the suit. Appellee claims that he assigned to the appellant, as a cash payment on his debt, a government rent check for $66, due to be paid to appellee some six months thereafter, in consideration of which payment appellant, through one Wilkes, a collector for appellant, orally agreed to extend, for thirty or sixty days, the maturity date of the balance owing upon a promissory note; and that the trustee in the deed of trust, before the expiration of the extension period, took possession of the personal property, over the protest of appellee, and sold it under the trust deed, which resulted in the damages claimed by appellee. Appellant makes the contentions, among others (1) that no such agreement was in fact made; (2) that if made, the collector had no authority or power to make it; (3) that if made and authority existed therefor, it was not valid and binding, because (a) it was uncertain and indefinite, and (b) there was no consideration for it; and (4) that the wrong, if there was wrong, was that of the trustee in the trust deed, the agent of both appellant, the beneficiary in, and

appellee, the maker of, the trust deed, for which appellant was in no wise responsible.

We have diligently considered all of the contentions of both parties presented by this record. Decision upon the binding effect of the alleged extension agreement disposes of the entire case.

On February 8, 1939, appellee executed to appellant a promissory note for $140, due on demand after September 1st following, bearing 5% interest from date. This was for borrowed money, loaned to appellee for the purpose of making a crop. On the same day, and to secure the payment of this note, appellee executed a deed of trust upon his crop to be grown during 1939, one mule and his farming implements, consisting of a middle buster, a turning plow and a side harrow.

Sometime after September 1st, no part of the note having been paid, appellant demanded payment thereof. It developed that appellee, without the consent of appellant, had sold all of his cotton, consisting of four bales, for around $190, had used the money, and had paid nothing on the debt.

Shortly after October 1st appellant placed the note in the hands of Wilkes for collection. Wilkes requested payment by appellee, and the rent check payment and extension arrangement took place. Appellee testified that the agreement was made. Wilkes testified that it was not made; that he told appellee that he had no authority to accept as a payment on the note anything but cash, and had no authority to extend payment; that all he could do would be to submit the matter to appellant. The record shows conclusively that Wilkes had only the authority he said he had, although ratification by appellant of the agreement by Wilkes, as the jury found was made, would be an open question, if it were necessary for us to decide that. Some five days following this conversation Wilkes, together with the trustee in the deed of trust, went to the home of Smith, and Wilkes told Smith the appellant would not agree to the extension, and that the

trustee would have to take the property unless the indebtedness was paid. Wilkes then left for Hattiesburg, leaving the trustee with Smith. Appellee told the trustee not to take the property until he, appellee, could go to Hattiesburg and get the money. Appellee and his wife then left for Hattiesburg, some nine miles away, leaving their son and the trustee at the home. The mule was in a stable, the door to which was closed; a chain was run through a hole in the door, thence around a post, and the ends connected by the shackle of a broken padlock. The farming tools were in the open near the end of the residence. Appellee says he was gone about an hour. The trustee testified that he waited two hours, and Smith did not return; and that he then took charge of the personal property, and carried it to Hattiesburg and advertised it for sale. Smith did not get any money that day. However, a day or two afterwards he did manage to get $87, and he paid that to appellant on the debt, taking a receipt therefor, which receipt showed the balance owing, without giving any credit for the rent check. Appellee was present at the sale, and Wilkes told him that appellant would buy in the property for a small price, so that appellee might pay the balance of the debt and redeem the property if he desired.

Accepting, as the jury found, that Wilkes agreed to extend payment of the balance of the note thirty or sixty days, and that he had authority to make such an agreement, the fundamental question is whether it was a legally binding agreement—whether there was a lawful consideration for it. An agreement to extend payment, in order to be binding, must be supported by sufficient consideration. Tsesmelis v. Sinton State Bank, Tex. Com. App., 53 S. W. (2d) 461, 85 A. L. R. 319; 3 R. C. L., page 1278, section 508; Goodman Mfg. Co. v. Mammoth Vein Coal Co., 185 Iowa, 253, 168 N. W. 912. The authorities seem to be in accord in holding that partial payment of the amount named in a contract after such payment is due is not sufficient consideration for an agreement of

the creditor to extend the time for payment of the balance owing under the contract, because such payment is merely a partial performance of a duty already existing. Tsesmelis v. Sinton State Bank, supra; 3 R. C. L., supra; Goodman Mfg. Co. v. Mammoth Vein Coal Co., supra; Note 52, L. R. A. (N. S.), 367; Note 85 A. L. R. 328; 21 R. C. L., Principal and Surety, section 68; Nalitzky v. Williams, 3 Cir., 1917, 237 F. 802; Foote v. Larimer County Bank & T. Co., 1927, 82 Colo. 323, 259 P. 1031; Frederick v. Tabor, 1923, 96 Okla. 99, 221 P. 505; Neyland v. Lanier, Tex. Civ. App., 1925, 273 S. W. 1022; Hughes v. Southern Warehouse Co., 94 Ala. 613, 10 So. 133; Varnum v. Bellamy, Circuit Court D. Indiana, 28 Fed. Cas. 1096, No. 16,886; Roberts v. Stewart, 31 Miss. 664.

The annotator in the note to 52 L. R. A. (N. S.), supra, states the rule as follows: "Partial payment of a note at or after maturity is no consideration for the promise of the holder to extend the time for the payment of the balance." The Alabama Court, in Hughes v. Southern Warehouse Co., supra [94 Ala. 613, 10 So. 134], said: "It requires an additional valuable consideration—something beyond part payment of the debt proposed to be extended —to bind the promisee to an observance of even an express promise to indulge."

In Black v. Slocumb Mule Co., 8 Ala. App. 440, 62 So. 308, 309, the Court said: "It is conceded in the argument that the mortgagor did not as a result of that occurrence secure the right to an extension of the time of payment of the debt, as a partial payment on a past due debt is not such a consideration as is required to support an agreement to that effect. Scott v. Scruggs, 95 Ala. 383, 11 So. 215; 9 Cyc. 900."

Roberts v. Stewart, supra, was an action to recover of a surety the balance owing on a note, the principal maker having died. The defendant, in one plea, set up that the principal maker made a payment on the note after it was due, in consideration of which the holder agreed, by a writing on the back of the note, to extend the maturity

date thereof, which was done; that when the agreement extension was made the maker was solvent, but that when he died he was insolvent; and that, therefore, the surety was discharged. The Court denied this contention in this language: "All the authorities hold, that in order to discharge the surety, there must be a binding contract between the creditor and the principal, founded on a valuable legal consideration, by which the creditor is precluded from suing upon the contract according to its original terms; and if there be no such consideration, the agreement cannot be said to be obligatory, and the creditor may, in point of law, disregard it and bring his suit at any time. Whatever might be the force of such an agreement, in point of good faith or morals, it certainly wants that indispensable requisite of a contract, a valid legal consideration. . . . For the contract for forbearance cannot be valid as such, unless it be founded on a new consideration, independent of that of the original contract, upon some benefit received or secured to the creditor which the principal was not bound to render under the original contract, such as the payment of interest, or a part of the debt before it was due, the giving of additional security or the like, as a consideration for further indulgence. But a partial payment, made after the debt has become due, cannot be a new and independent consideration. It is merely paying a part of what the debtor was already bound to pay in full. No benefit is received by the creditor, but what he was entitled to under the original contract, and the debtor has parted with nothing but what he was already bound to pay. It cannot therefore with any propriety be said that such partial payment would be a sufficient legal consideration to render the promise of further indulgence a binding contract, debarring the creditor of the legal right of suing upon the original contract, regardless of such agreement. Montgomery v. Dillingham, 3 Smedes & M. 647; Newell v. Hamer, 4 How. 684 (35 Am. Dec.. 415)."

In the case at bar the agreement of the creditor, if made,

was a mere indefinite indulgence. Smith made no promise whatever. The entire debt was past due, and, incidentally, past due because of appellee's own wrong in selling the security without applying the proceeds to the secured debt. The creditor could not benefit by accepting as a present cash payment a rent check payable some six months thereafter, even though there could be no question that the check would then be paid. But these rent-check payments are not definite and certain. It appears from this record that a dispute arose in this case as to whether appellee was entitled to the entire $66, owing to over-planting. There certainly was no detriment to Smith and no benefit to the appellant. There was not a sufficient consideration to support an executory agreement.

By the terms of the trust deed the trustee was authorized to take possession of the security and sell it if, in the opinion of the beneficiary, it became endangered, or if the maker failed to comply with the provisions of the application for the loan, or of the deed of trust. The trustee had a right to take the property here and there was nothing arbitrary or oppressive in the manner of his taking, even if appellant could be held liable for his acts, which it is not necessary for us to decide.

The peremptory instruction requested by appellant should have been granted.

Reversed and rendered.