C. I. T. CORPORATION, ASSIGNEE v. TURNER

No. 42776 November 18, 1963 157 So. 2d 648

518

*Walker & Thomson,* Starkville; *Satterfield, Shell, Williams & Buford,* Jackson, for appellant.

*P. L. Douglas,* Starkville, for appellee.

Brady, Tom P., J.

The appellant, C.I.T. Corporation, plaintiff below, filed a suit in replevin against the appellee, Glen A. Turner, defendant below, to repossess a certain tractor and its related equipment. The replevin suit was based on an action filed by appellant under an instrument called an "equipment lease" which had been executed by the appellee as lessee under date of October 8, 1959, with Southern Equipment Sales, Inc., as lessor, hereinafter called Sales, Inc. By this equipment lease the appellee began to purchase from Sales, Inc., said tractor and its related equipment. The lessor then assigned the contract to the appellant, C.I.T. Corporation, hereinafter called C.I.T., and the appellee began making payments to the assignee, appellant here.

Under the equipment lease contract, it was expressly provided that in case of default in making any one of thirty monthly payments by appellee, the lessor or the assignee, appellant here, would be entitled to immediate possession of the equipment. Under the terms of said lease the appellee was obligated unconditionally to pay to the lessor the sum of $14,806.50. At the time the contract was executed a cash payment of $493.55 was made by appellee, thereby leaving a balance of $14,312.95, which was to be paid in twenty-nine equal monthly installments of $493.50 each, the first being due November 8, 1959,

and thereafter on the 8th day of each month until said balance was paid.

The lease provided that appellee, in case of any default, was obligated to deliver the equipment to the lessor in good condition as when received, ordinary use, wear and tear excepted. The lessor, Sales, Inc., was not obligated to make any repairs or replacements. Appellee was bound to keep the equipment free from any and all liens and claims, and in case of any default by appellee, or lessee, the lessor was entitled to the immediate possession of said machinery and equipment.

It appears further that upon full payment of the total sum due under the lease the appellee would then become the owner of the tractor and equipment. On October 8, 1959, the same day on which the lease was executed, it was assigned to appellant, C.I.T., and appellee recognized such assignment and began making payments to the appellant, and continued to do so for some seven payments after October 8, 1959 payment. The payments for January and February 1960 were extended to the end of the term for a present payment of $271.00, so that eight monthly payments were made by Turner up to August 1960.

In August 1960, appellee, because of wear and tear on the tractor, had it repaired by Sales, Inc., the cost of repairs amounting to $3,200.00. A representative of Sales, Inc., informed the appellee that the entire transaction, including the balance of the purchase price of the equipment and the cost of the mechanical services, was to be refinanced, and appellee thereupon executed a conditional sales contract and a negotiable promissory note in the sum of $15,888.48. This was assigned to the Associates Discount Corporation, hereinafter called A.D.C. The appellee had been informed, so he claimed, by the representative of Sales, Inc., that the obligation in favor of C.I.T. under the equipment lease would be cancelled when he executed this subsequent instrument

in August 1960. Unfortunately this was not done, and it is because of the misrepresentation on the part of Sales, Inc.'s agent, and default of Sales, Inc., and its bankruptcy, that the present controversy arose.

After executing the conditional sales contract and after the same was assigned to A.D.C., appellee began making monthly payments to A.D.C. It is obvious that C.I.T. had not done anything to relieve appellee of his obligation and did nothing whatsoever to induce the appellee to sign a second contract. As a matter of fact, it knew nothing of the second contract which appellee had executed until several months later. After August 20, 1960, Sales, Inc. paid to appellant three monthly payments on the appellee's equipment lease for the months of August, September and October 1960, but failed and neglected to pay the full balance as its representative had stated to appellee would be paid. The equipment lease had been assigned with full recourse on Sales, Inc. Relying upon the assurances of the agent of Sales, Inc., appellee placed the second contract and his negotiable promissory note in the hands of Sales, Inc., without insisting on redelivery or cancellation of his existing lease contract with appellant. There is no doubt but that appellee was misled, but it does not appear that there was any fault in this connection on the part of either appellant or A.D.C.

This second responsibility which was assumed by the appellee was done so upon the wrongful assurance by the representative of Sales, Inc., that his debt to C.I.T. would be cancelled. In December 1960, the financial difficulties which faced Sales, Inc., resulted in it becoming a bankrupt. The November 1960 payment due appellant and all payments due thereafter on said equipment lease remained in default until March 9, 1961, one monthly payment being made on that date.

On January 4, 1961, letters were written by agents of the appellant and the appellee and the attorneys repre-

senting both the appellant and appellee, which appellee urges is the basis of a claim asserted by appellee that appellant obligated itself to defend the appellee against any suit by the second purchaser of the obligation relating to the same equipment. Not only does appellee claim that appellant agreed to hold him harmless in any suit by A.D.C. against him, but also claims that for the consideration of his carrying out his original obligations appellant obligated itself to pay some $15,000 to A.D.C. for the appellee in the event A.D.C. recovered that amount in judgment against appellee.

The first letter in question was written on January 4, 1961, by Mr. Taylor, secretary of appellant, residing in Memphis, Tennessee. He requested appellee to make the payment of $493.55 which was due on November 8, 1960 under the equipment lease, and in exchange therefor suggested that appellant would defer the December and January payments to the end of the lease term and would protect and hold him harmless. On January 9, 1961, Mr. Douglas, attorney for appellee, wrote to Mr. Taylor asking for a clarification of the offer which had been made by him. On January 16, 1961, Taylor renewed the request to resume monthly payments and again offered to hold the appellee harmless in any action against him by A.D.C. on his contract of August 22, 1960, which was the conditional sales contract assigned by appellee in favor of A.D.C. for the refinancing of the loan on the equipment made necessary by the repairs. No reference was made to the negotiable note which appellee had signed in addition to the conditional sales contract. It is possible that Taylor was under the firm belief that A.D.C. would not be able to seize the equipment.

Regardless of whatever his reasons or motives may have been in giving this assurance to appellee, it is nevertheless a fact that appellant still had a first lien on the equipment. In a letter on February 16 from

Mr. C. F. Hodgins, vice president of appellant, Mr. Douglas, the attorney for appellee, was assured that Mr. Taylor had authority to bind the appellant. A letter of February 20 from Mr. Hagenback for appellant written to appellee Turner had the effect also of recognizing Taylor's authority to bind appellant, and it pointed out that appellee had not accepted the offer of Taylor and requested the four payments in default be paid by return mail.

No response was made by appellee, so it appears that he did not accept the offer made by the letters of appellant with reference to his payment up to February 20. Appellee made no further efforts in this regard until March 9, 1961, which was subsequent to the time suit was instituted by A.D.C. in United States District Court in Jackson, Mississippi. This suit was instituted on February 28, 1961, against appellee on the negotiable note which he had given Sales, Inc., on August 22, 1960. No claim was made against appellee under his contract of August 22 which was the conditional sales contract he had executed, but it was a suit expressly on his note. There was no claim or demand made for the tractor or any lien asserted against it by A.D.C. in said suit.

Appellee was served with a summons in the Federal case, and he then took the summons with a copy of the complaint attached thereto to agent Taylor in the office of appellant in Memphis, Tennessee, on March 9, 1961. On that day it appeared that appellee was five payments in default on the original equipment lease held by appellant. Appellee urges that an oral extension agreement was entered into by and between appellee and appellant through Taylor, its secretary. It is this alleged agreement which is relied upon by appellee to defend against the replevin suit instituted by appellant.

The consideration reflected by the record in this case was the payment of a delinquent monthly payment on the equipment lease in the sum of $493.55. This was

the consideration which appellee urges was given appellant. It appears that this one delinquent monthly payment was already due on the equipment lease which appellee had obligated to pay. Aside from this payment there is no other monetary consideration involved which was asserted in the pleadings of appellee.

Appellee nevertheless maintains that he offered to furnish legal services for appellant, and appellant likewise offered to furnish legal services for appellee. The record shows that appellee himself admitted that when he made this payment to appellant in the office of its official, Taylor, that he had paid no more than he was already obligated to pay. It is the contention of appellee, however, that because of this new oral agreement of appellant, acting through Taylor, that appellant became obligated to appellee to furnish him defense in said Federal suit; to hold him harmless from the demand of A.D.C. to the extent of $14,564.44, plus attorneys' fees, this being the demand of A.D.C. on the note given by appellee; and that all of this is on account of the payment of the one delinquent installment on the five installments then due, and upon the promise of appellee to continue making the monthly payments thereon until the full balance was paid and not to relinquish the tractor and equipment involved.

On March 9, 1961, the date on which appellee paid the sum of $493.55 retiring one delinquent installment in the office of appellant in Memphis, Taylor wrote a letter to appellant's attorneys wherein he requested that they intervene in the Federal case and take such action as might be necessary to hold appellee harmless. On March 23, 1961, appellant's attorneys wrote appellee's attorney and advised that appellant was under no liability or obligation to appellee and would not take any action in the matter in behalf of appellee.

On April 5, 1961, Douglas, attorney for appellee, replied at length by letter to the appellant, with copies

to said attorneys, wherein he reviewed the situation fully. A conditional tender of the check of appellee for another monthly payment of $493.55 was included. This was refused and the check was returned by appellant because it was tendered on the condition that appellant would hold appellee harmless against the suit of A.D.C. then pending in Federal Court.

An additional tender of a monthly installment on the equipment lease was made by letter of Mr. Douglas on May 6, 1961, likewise conditioned on compliance with the alleged contract to defend and hold appellee harmless. This check was also rejected and returned. On May 26, 1961, by an affidavit in replevin, this suit was instituted. Writ was issued on the same date and the return of the sheriff on July 6 shows that the property had been seized. Declaration in replevin was filed on May 26 and the answer thereto was filed on October 11, 1961. Both the declaration and answer were later amended to bring in certain exhibits which had been originally omitted.

While this replevin suit was pending in the Circuit Court of Oktibbeha County, the appellee filed a third party complaint against appellant in the Federal Court in Jackson, on or about December 6, 1961. This was in the Federal case which had been instituted on February 28, 1961 by A.D.C. against appellee on his note. The third party complainant raised the same identical legal questions which were urged in the answer of appellee in the replevin suit of appellant in the Circuit Court of Oktibbeha County.

In the Federal suit, appellee maintained that appellant was obligated to defend him and hold him harmless against the claim of A.D.C. because of the alleged agreement of agent Taylor of appellant, which was alleged to have been made on March 9, 1961. As seen in the face of the third party complaint made an exhibit in this record, appellee urged that the agreement was spell-

ed out in certain papers and documents, which include the letters referred to above. Thus there were two suits then pending in two different courts between the same parties herein. The sole and only defense claimed by appellee was the assertion that appellant was under obligation by virtue of the supposed new agreement or novation of the appellant, acting through its agent Taylor on March 9, 1961 to defend appellee and hold him harmless against the claim of A.D.C.

The replevin action in Oktibbeha County was stayed by order of the court dated January 23, 1962, awaiting decision of the Federal Court. A motion was filed in the Federal Court by appellant, third party defendant, for dismissal of the third party complaint on the ground that it failed to state a cause of action on behalf of appellee, third party plaintiff. A hearing was held on that motion on March 30, 1962, and the only testimony was that of Mr. Douglas, attorney for appellee, the third party plaintiff in the Federal case. It was stated by appellee's attorney that the testimony of appellee would be simply accumulative to his testimony, so appellee did not need to testify.

In the Federal Court, Attorney Douglas gave a full account of what had transpired at Memphis on March 9, 1961, what was done, what was said, or promised by Taylor, appellant's official agent, and by appellee and his attorney, Douglas. It appears that nothing more than an agreement was made to extend the time of payment without any consideration other than, as far as appellant was concerned, the payment of one past due installment of the remaining delinquent installments which had been and were due and owing.

On April 2, 1962, the United States District Court rendered its opinion to the effect that appellant was not bound by any agreement with appellee made on March 9, 1961, in Memphis, because there was no consideration given therefor on the part of appellee, as reflected in

the certified copy of that opinion which is marked and entered as an exhibit to the pleadings here. The judgment of the Federal Court dated April 18, 1962 was entered, which was a final dismissal of the third party complaint of appellee against appellant. This judgment determined that appellant, under the alleged new contract of March 9, 1961, was under no obligation to appellee because of the letters, the oral statements or alleged agreements made by its agent. It was urged by appellant that this dismissal constitutes a final determination and that the matter becomes res judicata and is binding upon appellee. The plea of res judicata was raised by appellant in a motion to strike the answer in the replevin action in the Circuit Court of Oktibbeha County, which motion was filed by the appellant on October 16, 1962. Although this action had been stayed by the judge of said circuit court, the lower court nevertheless refused to sustain the motion to strike urged by the plea of res judicata and overruled the same. Whereupon the case proceeded to trial on October 16, 1962. The only possible ground for submitting the case to the jury was that which was set out in the answer in which Turner claimed there was a new contract agreed upon on March 9, 1961.

Because of this alleged new contract, appellee claimed that appellant was obligated to defend him in the Federal suit, though the only consideration for such agreement was his payment of one of the delinquent installments provided for by the original contract and his renewed agreement to pay the remaining installments. While the replevin suit actually involves only the right of ownership or possession of the equipment involved, nevertheless, in the lower court the question of whether there was any consideration for the alleged promise made by appellant through its agent and whether the agent had authority to make such a commitment as would bind the appellant was duly considered.

The trial proceeded and a motion by appellant to strike the answer of defendant was made on the grounds that it failed to state a valid defense, which motion to strike was overruled. The lower court likewise refused to sustain the plea of res judicata urged by appellant, and refused to instruct the jury to return a verdict in favor of appellant, and overruled the motion of appellant for a new trial. All of these acts on the part of the lower court are now assigned as errors on the appeal to this Court.

A money judgment was rendered in the court below in the sum of $3,616.10, together with all costs in appellee's behalf. The value of the tractor and equipment was fixed at $12,500, and it was conceded that the sum of $8,883.90 was due and owing by appellee to appellant. The truck and equipment not being available, the money judgment was rendered in favor of appellee. While the motion for a new trial set up other errors committed in the trial of the case in the Circuit Court of Oktibbeha County, the appellant in its assignment of errors presents the four grounds above mentioned.

It is not necessary to examine but one of these, namely, that the court erred in failing to instruct the jury to return a verdict for the plaintiff. However, in determining this question we are forced to also consider another assignment of error by appellant, which is: The lower court should have sustained appellant's plea of res judicata. In turn, the opinion and judgment of the U. S. District Court, which was the basis of the plea of res judicata, is squarely predicated upon the finding that there was no legal consideration flowing from the appellee to the appellant to validate the novation.

Irrespective of the opinion and judgment entered by the U. S. District Court, it is our conclusion that there was no legal consideration for the alleged new contract, which the appellee urges was consummated. Appellee based his defense to the replevin action solely upon the

theory that there was a valid new contract which appellant first breached, and that this breach on the part of appellant relieves the appellee for failure to carry out his obligations under the lease agreement he had made with Sales, Inc., and which was assigned to appellant. To be more specific, appellee urges that his tender of the two installments due, conditioned upon appellant carrying out its obligations under the alleged new contract, was a bona fide tender and was sufficient to prevent the appellee from being in default.

 The considerations for the new contract, which the appellee urges flowed from him of legal benefit to the appellant, were that (1) he would not relinquish possession of the tractor and equipment; (2) that he would continue to make the payments due and owing; (3) that he made one payment of $493.55, due and owing; (4) that he would assist appellant in maintaining its claim under its lease, and (5) to furnish appellant an attorney to assist in the defense of all legal actions relative thereto in the Federal suit. There is no merit, as shown by the record, in the contention that the offer to assist appellant in maintaining its claim under the lease, and in furnishing an attorney to assist the appellant constitutes valid consideration. The A.D.C. suit against Sales, Inc. and the appellee did not involve the title of appellant and its lease. Appellant's rights were not considered in said suit except as the appellee sought to involve them. It was simply a suit on the appellee's note. A.D.C. recognized the appellant's superior title. In the Federal Court suit, appellee did not even urge these last two elements of consideration.

The other three grounds of alleged consideration merit analysis since they present the basic questions before us, namely, (1) was there a failure of consideration for the alleged new contract, which contract would arrest and prevent the default by appellee? (2) Does the judgment in the U. S. District Court constitute a bar to the

defense of the appellee under the principle of res judicata? The first question is expressly involved in the answer of the second, and they will therefore be considered together.

In Memphis Automatic Music Co. v. Chadwick, 164 Miss. 635, 146 So. 137, a case which is in point, the Court stated that the only remaining question in this case was whether or not the alleged oral agreement of November 6, 1930, was one supported by sufficient consideration to render it enforceable. The only consideration sought to be proved to support this oral agreement was the payment of two past due notes under the terms of the original contract, and which appellees were obligated to pay. The proof shows that at the time of the making of this alleged oral contract, the appellees had no defense to the two notes which were paid, but on the contrary, it showed that they were then valid subsisting and past due obligations of the appellees, and that payment of these past due contractual obligations constituted no consideration for the alleged oral contract. Cited in this case is Hunt v. Knox, 34 Miss. 655; Bell v. Oates, 97 Miss. 790, 53 So. 491.

In Hattiesburg Production Credit Assn. v. Smith, 191 Miss. 119, 1 So. 2d 768, which is a similar case where there was an alleged agreement extending the time of payment, the Court found as follows: "Accepting, as the jury found, that Wilkes agreed to extend payment of the balance of the note thirty or sixty days, and that he had authority to make such an agreement, the fundamental question is whether it was a legally binding agreement — whether there was a lawful consideration for it. An agreement to extend payment, in order to be binding, must be supported by sufficient consideration. Tsesmelis v. Sinton State Bank, Tex. Com. App., 53 S.W. 2d 461, 85 A.L.R. 319; 3 R.C.L., page 1278, section 508. . . . ."

The authorities seem to be in accord in holding that partial payment of the amount named in a contract after such payment is due is not sufficient consideration for an agreement to the creditor to extend the time for payment of the balance owing under the contract, because such payment is merely a partial performance of the duty already existing. Roberts v. Stewart, 31 Miss. 664.

Roberts v. Stewart, supra, was an action to recover from a surety the balance owing on a note, the principal maker having died. The defendant, in one plea, set up that the principal maker made a payment on the note after it was due, in consideration of which the holder agreed by writing on the back of the note to extend the maturity date thereof, which was done. When the agreement extension was made, the maker was solvent, but when he died he was insolvent, and, therefore, the surety was discharged. The Court denied this contention in the following language:

"All the authorities hold, that in order to discharge the surety, there must be a binding contract between the creditor and the principal, founded on a valuable legal consideration, by which the creditor is precluded from suing upon the contract according to its original terms; and if there be no such consideration, the agreement cannot be said to be obligatory, and the creditor may, in point of law, disregard it and bring his suit at any time. Whatever might be the force of such an agreement, in point of good faith or morals, it certainly wants that indispensible requisite of a contract, a valid legal consideration . . .

"For the contract for forebearance cannot be valid as such, unless it be founded on a new consideration, independent of that of the original contract, upon some benefit received or secured to the creditor which the principal was not bound to render under the original contract, such as the payment of interest, or a part of

the debt before it was due, the giving of additional security or the like, as a consideration for further indulgence. But a partial payment, made after the debt has become due, cannot be a new and independent consideration. It is merely paying a part of what the debtor was already bound to pay in full. No benefit is received by the creditor, but what he was entitled to under the original contract, and the debtor has parted with nothing but what he was already bound to pay. It cannot therefore with any propriety be said that such partial payment would be a sufficient legal consideration to render the promise of further indulgence a binding contract, debarring the creditor of the legal right of suing upon the original contract, regardless of such agreement. Montgomery v. Dillingham, 3 S. & M. 647; Newell v. Hammer, 4 How. 684.''

In the Roberts case, supra, the language of the Court seems peculiarly to have application here: ''For the contract for forbearance cannot be valid as such, unless it be founded on a new consideration, independent of that of the original contract, upon some benefit received or secured to the creditor which the principal was not bound to render under the original contract, such as the payment of interest, or a part of the debt before it was due, the giving of additional security or the like, as a consideration for further indulgence. But a partial payment, made after the debt has become due, cannot be a new and independent consideration. It is merely paying a part of what the debtor was already bound to pay in full. No benefit is received by the creditor, but what he was entitled to under the original contract, and the debtor has parted with nothing but what he was already bound to pay.''

In the case at bar, on March 9, 1961, there was then past due by the appellee to appellant five monthly payments in the total amount of $2,467.75. This covers the past due payments then in default for November, De-

cember 1960, January, February and March, 1961, due on the 8th day of each of said months. The holder of the equipment lease in the case at bar was entitled to immediate possession of the property seized under the writ of replevin at any and all times on and after the default on November 8, 1960. So on March 9, 1961, the payment of one delinquent monthly payment then in default was wholly insufficient to support any contract for the extension of the obligation, as is urged by appellant, and much less for a side agreement to pay the sum of $14,312.95 in protection of appellee in A.D.C.'s suit. When the affidavit for writ of replevin was filed on May 26, 1961, there were at least two payments delinquent at that time.

 It is obvious from the record that the appellee was already obligated to retain possession of the tractor under the original equipment lease. It appears, moreover, that appellee was under the obligation to pay the balance of the thirty payments under said equipment lease of $493.55 each, which had not been paid. There is no assistance that appellee could give the appellant in maintaining the claim under the lease, and in furnishing an attorney to assist in defense of all legal actions relative thereto for the reason that there was no suit based on it, suit in Federal Court being based upon the note given by appellee. There is no contest of the claim of the appellant insofar as a superior lien on the tractor is concerned, or the right of appellant to the lease payments owned by appellee. It can scarcely be urged that the attorney of the appellee rendered any assistance, or could render any assistance to appellate in the case pending in Federal Court. On the other hand, the record shows that the attorney for appellee did all in his power to establish a defense on the part of appellee in protection of appellee against the rights of appellant. The appellee evidently endeavored, by tendering checks for the months of April and May, with the conditions that

were attached thereto, to entice the appellant to accept and be bound by the letters purporting to establish the aforesaid oral agreement. This likewise can scarcely be classified as assistance to the appellant, or in appellant's behalf.

The cases cited by appellee of Boone v. Boone, 58 Miss. 820, and the cases cited in Corbin on Contracts, Sec. 140, p. 439, of Stanley v. Sumrall, 167 Miss. 714, 147 So. 786, and Sadler v. Lee, 232 Miss. 349, 89 So. 2d 863, are clearly distinguishable from the case at bar. In McGehee v. McGehee, 227 Miss. 170, 85 So. 2d 799, cited by appellee, there was a forbearance to sue, which is, and has been held to be, sufficient consideration for a promise. But in the case at bar there is not the slightest indication of a forbearance to sue on the part of appellee. It was the appellee who wanted to keep from being sued by appellant, and to be protected from the suit which had already been filed against him by A.D.C. in Federal Court. There was no mention whatsoever in the Federal Court of any forbearance to sue on the part of appellee or to defend on the part of appellee. He had no suit and claimed no defense of his written obligation to appellant under the equipment lease. Sadler v. Lee, supra, which appellee urges sets forth the grounds that a promise that induces an action of forbearance of debt by promise is binding, although not supported by consideration, has no application because the promise to pay what is already owed is no valuable consideration. In reply it is also sufficient to say that there can be no consideration in the case unless there was a forbearance or a giving up on the part of the appellee of some right which he had against the appellant.

■■ ■ The appellee was deceived by Sales, Inc., and that corporation, now bankrupt, is indeed the offensive offender at fault, but this fault cannot be attributed to appellant, who had no knowledge of what Sales, Inc., had done and knew nothing about any subsequent deal-

ings between Sales, Inc. and appellee until all had been consummated and the suit had been filed in Federal Court by A.D.C. We hold that the act of the secretary, Taylor, a layman and an employee of appellant, in making the agreements as set forth does not constitute by any means legal consideration for such agreement and does not add anything in behalf of appellee's contention that there was consideration offered in these instances.

■■ ■ There is no merit in the contention of appellee that the filing by appellant of a claim against Sales, Inc., in the bankruptcy proceedings was injurious to the rights of appellee, or changed the position between the appellant and appellee. Under the cases cited and the law generally, therefore, we hold that there was no consideration for any promise on the part of appellant by the payment of one of the five delinquent installments due on appellee's existing contract, and that appellee is without standing here on the merits since there was no consideration given by appellee for any promise made by appellant corporation to extend the payments and defend and hold appellee harmless in a suit against him by A.D.C.

The opinion and judgment entered in the Federal Civil Action No. 3089 of the appellee also decided the question of whether there was legal consideration for the alleged new contract against appellee. Appellee's attorney stated in the Federal record that appellee's testimony would only be cumulative to Attorney Douglas' testimony. Therefore, all the facts relating to the question of consideration were before the Federal Court.

The testimony of appellee's attorney and the exhibits which were entered in this case from the record in the Federal Court are very revealing. The complaint of A.D.C. against Sales, Inc., and Glen A. Turner, defendants, did not place in issue for consideration by the Federal Court the question of whether or not there was consideration or failure of consideration for the alleged

new contract or novation. But the third party complaint of the appellees here, as third party plaintiff in said Federal Court, did place in issue and for consideration the identical question of consideration which is now being urged by appellee in this replevin suit.

Paragraph 6 of said third party complaint filed in Federal Court is as follows: "Third party defendant, in order to induce third party plaintiff to resume making payments to third party defendant, entered into a contract and agreement with third party plaintiff under the terms of which third party defendant agreed to defend third party plaintiff in any action brought against third party plaintiff by Associates Discount Corporation and save him harmless from any liability to them on the contract of August 22, 1960, and to relieve him of any obligation to third party defendant in case of recovery by Associates Discount Corporation and to completely indemnify third party plaintiff against any loss or damage of any kind whatsoever in connection with any action that might be brought against him by Associates Discount Corporation."

It goes further and then states that the contract of indemnity on the part of the third party defendant, appellant here, in favor of third party plaintiff, appellee here, is spelled out in the following papers and documents, and there is listed seven of the numerous letters which were exchanged between the appellant and appellee and their attorneys.

Paragraph VII further alleged that in spite of the fact ". . . . that third party plaintiff did in all particulars live up to and perform his various agreements with third party defendant, said third party defendant, even after having instructed its attorneys to defend the case on behalf of third party plaintiff, subsequently, through its said attorneys and then through its officers and agents, decline to live up to its contract of indemnity with third party plaintiff for the alleged reason that the

complaint filed by plaintiff against defendant and third party plaintiff Glen A. Turner was not within the scope of the agreement made by and between third party plaintiff and third party defendant.''

The pleading concludes with the prayer that the third party plaintiff be protected against ''any recovery and judgment rendered herein in favor of the plaintiff and against him be rendered against the third party defendant, and that the defendant and third party plaintiff Glen A. Turner have judgment against third party defendant for the amount of any judgment rendered against him herein,'' including any costs and attorneys' fees which might be awarded to· the plaintiff (A.D.C.) in Federal Court, and including a reasonable attorney's fee to attorney for the third party plaintiff, along with all costs of court.

Appellee set forth in these pleadings for all intents and purposes the same allegations and defenses and charges which are made now in defense of the replevin suit. The decision or findings of the U. S. District Court clearly reflect that court's opinion with reference to the assertion urged by appellant, namely, that the consideration was insufficient to create a novation or a new contract. The opinion of the U. S. District Court discloses clearly the testimony offered by the appellee in that court as third party plaintiff, which is substantially the same testimony as was offered by appellee in the case at bar.

The Federal Court stated that ''the question posed is as to whether or not Turner agreed to do more than he was already obligated to C.I.T. to do under his contract to them.'' That court held the promise of appellant to appellee to get him to do that which he was already legally bound to do would be without consideration; that there was no variation of circumstances involving the same principle which would change the rule; that there is no promissory estoppel in this case such

as was involved in Lusk v. Universal, 164 Miss. 693, 145 So. 623; that appellants' collateral agreement was executory, and thus like Cragin v. J. S. Eaton & Bros., 133 Miss. 151, 97 So. 532, where the contractual obligation was modified and thus fully performed and seller sued for recovery of his loss on the original contract, and the court held the agreement as performed not to be without consideration. The controlling principle involved here, the Federal Court held, is illustrated in Memphis Automatic Music v. Chadwick, supra, where the holder of commercial paper agreed to make repairs to and even take a piano back if then unsatisfactory to induce the buyer to pay a past due note, and the court held such obligation invalid as being without consideration.

The Court further stated: "Oral testimony was taken on behalf of Turner on this motion and the Court is of the opinion that all of the evidence before the Court on this motion undeniably shows that this collateral obligation of C.I.T. was without consideration and is unenforceable; that such matters outside the pleadings being presented to and not excluded by the Court under Rule 12(b) and the Court being of the opinion there is no genuine issue as to any material fact between the parties on this third party complaint and that the third party defendant is entitled to a summary judgment under rule 56(c), a judgment to that effect may be presented for entry."

The U. S. District Court then entered a judgment dismissing the third party complaint of the appellee, Glen A. Turner. The order reads: "Came on this cause to be heard this day on motion of the third party defendant, C.I.T. Corporation, to dismiss the third party complaint filed herein by Glen A. Turner, the defendant and third party plaintiff, for alleged failure of the third party complaint to state a cause of action upon which

relief may be granted and the court having heard argument of counsel and being fully advised in the premises is of the opinion that said motion is well taken and should be sustained.

"It is therefore ordered and adjudged that said third party complaint be and same is hereby dismissed for failure to state a claim upon which relief can be granted in that the alleged indemnity agreement which was the basis of the claim against said third party defendant was obtained without any legal consideration to support or impose liability thereon as against the third party defendant. So ordered, and adjudged."

■■ ■ In conclusion, and with reference to the claim of appellant that the doctrine of res judicata was applicable in this case, we feel that this contention is likewise well founded. The appellee here chose the forum for his defense and redress: The Federal Court. It was there that he elected to use an additional forum whereby he hoped to be able to escape the defense of the replevin suit. The pleadings in both cases were nothing more or less than the claim of a novation or a new contract which was alleged to have been entered into with the appellee on March 9, 1961, through the secretary, Mr. Taylor, for and on behalf of the appellant corporation, whereby the appellee claimed that said appellant assumed the obligation of defending appellee and holding appellee harmless in a suit filed against him by A.D.C. in Federal Court. That issue was finally and completely determined by the judgment of the Federal Court, which was a final dismissal of the third party complainant, which took place on April 4, 1962.

The law of the doctrine of res judicata is discussed fully in 30A Am. Jur., Judgments, Sec. 324, p. 371, et seq. It is said: "The doctrine of res judicata may be said to inhere in the legal systems of all civilized nations as an obvious rule of expediency, justice, and public

tranquillity. Public policy and the interest of litigants alike require that there be an end to litigation which, without the doctrine of res judicata, would be endless. The doctrine of res judicata rests upon the ground that the party to be affected, or some other with whom he is in privity, has litigated, or had an opportunity to litigate, the same matter in a former action in a court of competent jurisdiction, and should not be permitted to litigate it again to the harrassment and vexation of his opponent. The doctrine of res judicata not only puts an end to strife, but produces certainty as to individual rights and gives dignity and respect to judicial proceedings. . . . .''

 It cannot be doubted that the principles of res judicata apply to Federal Court judgments and State Court judgments. Sec. 363, 30A Am. Jur., provides: ''A final judgment on the merits rendered by a court of competent jurisdiction is conclusive as to the rights of the parties and their privies, and as to them constitutes an absolute bar to a subsequent action involving the same claim, demand, and cause of action.''

In the State of Mississippi the doctrine of res judicata is in full effect. Relative to this question, this Court, in the case of Kimbrough v. Wright, 211 Miss. 63, 50 So. 2d 909, stated: ''It is a fundamental principle of jurisprudence that material facts or questions which were in issue in a former action, and were there judicially determined, are conclusively settled by the judgment rendered therein, and that such facts or questions become res judicata and may not again be litigated in a subsequent action between the same parties regardless of the form the issue may take in a subsequent action. 30 Am. Jur. 920, par. 178 and cases therein cited; Harvison v. Turner, 116 Miss. 550, 77 So. 528; Dean v. Board of Supervisors of DeSoto County, 135 Miss. 268, 99 So. 563; Bates v. Strickland, 139 Miss.

636, 103 So. 432; Cotton v. Walker, 164 Miss. 208,.144 So. 45.''

The case of Duett v. Pine Manufacturing Co., 209 Miss. 830, 48 So. 2d 490, is pertinent to the question of res judicata here. In the county court the appellant brought suit for the unpaid balance of the actual value of the timber withheld by defendant at the time of settlement of the demand note. In the same suit appellant could have sued for the statutory penalty as well as for the value of the trees. In the county court the question was, and later raised in the circuit court, how much more the defendant owed the plaintiff for the timber wrongfully cut. This question was decided, judgment rendered, and the amount paid. The court held that the county court judgment was res judicata as to any other cause of action that appellee had against Pine Manufacturing Company on account of the cutting of timber.

The appellee's claim of consideration involved in the replevin action, had, by his own action, been decided against him in his third party claimant suit against the appellee in the Federal District Court. The decision of the Federal Court constitutes res judicata of the appellee's basic and necessary element of defense in the case at bar.

The decision of the Federal Court applies precisely in this case and the plea of res judicata which was filed by the appellant in this case, therefore, in the opinion of this Court, should have been sustained. Garraway v. Retail Credit Co., 244 Miss. 376, 141 So. 2d 727; Darrow v. Moore, 163 Miss. 705, 142 So. 447; Von Zondt v. Town of Braxton, 149 Miss. 461, 115 So. 557; Lyle Cashion Co. v. McKendrick, 227 Miss. 894, 87 So. 2d 289.

██ ██ Appellee, in his effort to disprove and void the contention of appellant with reference to the principle of res judicata applying in this case, sets forth in his brief the well known essentials which he asserts are

necessary ingredients in order to constitute res judicata, as follows: (1) Identity in the thing sued for; (2) identity in the cause of action; (3) identity of persons and parties to the action; and (4) identity of quality in the persons for or against whom the claim is made. Eight cases are cited in support of this alleged well established rule in this State which constitute the essentials necessary to establish res judicata. But as was pointed out in Lyle Cashion Co. v. McKendrick, supra, there are two aspects to the doctrine of res judicata, first, the merger of the cause of action into the judgment or as a bar precluding the party from maintaining another action on the same cause of action irrespective of what issues were litigated and determined in the former action; and, second, the principle of collateral estoppel which precludes relitigation in another action of a specific question actually litigated and determined by and essential to the judgment even though a different cause of action is the subject of this subsequent proceeding. The cases cited by appellee apparently relate to the first aspect of the doctrine of res judicata which is the merger of the cause of action into the judgment or as a bar precluding a party from maintaining another action on the same cause of action irrespective of what issues were litigated or determined in the former action.

In the case at bar, however, it is the second aspect that applies to bar the appellee by virtue of the decision of the U. S. District Court. Therefore, it appears to us that the authorities cited by appellee in support of his contention that the doctrine of res judicata do not apply and will not control in the case at bar. From the foregoing, it is apparent that the appellee is without standing here on the merits of the suit since we hold that there was no legal consideration for any promise made by the appellant corporation official to extend the payments and to defend and hold appellee harmless in a suit against him by A.D.C. Furthermore, we hold that

this matter has been fully determined by the Federal Court, and the appellee is collaterally estopped under the rule of res judicata.

The trial court should have sustained the plea of res judicata and also should have directed a verdict for the appellant. For these reasons this cause is reversed and judgment is entered here for appellant.

Reversed and judgment here for appellant.

*McGehee, C. J., and Ethridge, Gillespie and McElroy, JJ.*, concur.